## A00A1535. STRANGE v. THE STATE.
(535 SE2d 315)

McMurray, Senior Appellate Judge.

Following an earlier mistrial, a Morgan County jury convicted defendant of four counts of aggravated assault.[1] The superior court thereafter sentenced defendant consecutively and concurrently to 50 years confinement, to serve 40 and the remainder probated.[2] Defendant now appeals upon the superior court's denial of his motion for new trial, as amended. *Held*:

Viewed in a light most favorable to the jury's verdict, the evidence pertinently shows that defendant and his friend, Derek Bray, were guests at a 1996 Fourth of July party at the home of the victim, John Thomas Cathey II. At about 11:00 p.m. while outside, two brothers attending the party, Todd and James Copeland, overheard the defendant and Bray in a discussion about "loading the clip" as they walked to their car. The brothers reported what they had heard to a number of the guests at the party and went back outside to further check on the defendant and Bray. While doing so, James Copeland observed defendant in the act of loading a 9 mm semiautomatic pistol. The Copelands returned to the party to further report this information, and, at approximately 12:30 a.m., July 5, 1996, Douglas Phelps, the victim, Cathey, and Grey Lewis left the party to investigate. Finding defendant and Bray on the driveway of the residence, the three asked the defendant about the gun. The defendant denied the claim of the loaded weapon, explaining that he had only been rolling a marijuana cigarette. The three young men accepted defendant's explanation and went back to the party.

Shortly thereafter, Carrie Harper, who had come to the party with the defendant and Bray, told Phelps that she had seen a gun in the car on the way to the party and asked Phelps to try to get the weapon to diffuse the situation. Phelps passed this information on to Cathey and Lewis. At about 12:45 a.m., the three observed defendant and Bray walking toward their car and followed them. Phelps grabbed the defendant from behind thinking he was going to the car to get the gun. However, when he did so, the defendant pulled a 9 mm semiautomatic out and fired a single shot into the ground. Phelps released the defendant and sought cover under a nearby vehicle. Defendant wheeled and ran down the driveway toward the woods. When Phelps emerged, he saw Lewis holding Bray from

---

[1] The jury acquitted defendant of a single count of murder (Count 1) and a single count of aggravated assault (Count 6).

[2] The superior court sentenced defendant to twenty years confinement as to Count 2, twenty years confinement as to Count 3 consecutive to Count 2, ten years confinement as to Count 4 consecutive to Count 3; ten years confinement as to Count 5 concurrent to Count 4; to serve forty years and the remainder of ten years probated.

behind and proceeded to strike Bray in the face. Additional shots directed at the people at the party rang out from the bottom of the driveway as the defendant shouted "Come on, you mother [expletive deleted]."

Cathey then ran down the driveway and followed defendant into a nearby field where a struggle over the gun ensued. Three shots were fired. Hit in his chest by one round, Cathey fell to his knees, uttering, "You shot me, boy, you know." Defendant responded saying, "I know I did."

James Darnell who had seen Cathey shot pursued the defendant as he ran, finally stopping defendant behind a tree by throwing rocks at him. Moments later, Darnell waved two cars down which were returning to the party. Once the vehicles came to a stop, he told the occupants that Cathey had been shot and asked James "Dusty" Bonner, the driver of the lead vehicle, to direct his headlights to the area where defendant was hiding. As Bonner did so, defendant stepped out from the tree where he was hiding and fired four to five shots at Bonner's vehicle — one of the rounds striking the truck's back fender on the passenger's side. Bonner "took off" when he heard shots fired. Melissa Malcom sat in the passenger's seat of Bonner's vehicle. In addition to hearing shots fired, she observed muzzle flashes at a range of 20 feet which appeared to be directed at the vehicle. On this, Malcom "laid down in the seat and said go."

Defendant ran once more, climbing into a briar patch where in ten minutes he was asleep. Defendant slept through much of the manhunt which followed, turning himself in the following morning to Lieutenant Mike Pritchett of the Morgan County Sheriff's Office. Later defendant led the authorities to the semiautomatic he used in the shooting spree. The weapon was empty.

1. Defendant challenges the sufficiency of the evidence to support his convictions for aggravated assault as to Bonner and Malcom. In particular, he contends that he acted in self-defense and that the State's attorney proved neither criminal intent nor reasonable apprehension of serious bodily injury in Bonner or Malcom. We disagree.

> On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the verdict, and the appellant . . . no longer enjoys a presumption of innocence; moreover, an appellate court does not weigh the evidence or determine witness credibility but only determines whether the evidence is sufficient under the standard of *Jackson v. Virginia*.[3] . . . Conflicts in the testimony of witnesses,

---

[3] 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

including the State's witnesses, [are] a matter of credibility for the jury to resolve. As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld.[4]

Reviewing the evidence in the light most favorable to the jury's verdicts and leaving evidentiary weight and credibility to the jury, we find that the jury could have found the defendant guilty beyond a reasonable doubt of the crimes of aggravated assault in issue in the case sub judice. While defendant testified that he acted in self-defense in the face of the State's testimony to the contrary, "[t]he determination of a witness' credibility . . . is within the exclusive province of the jury."[5] Likewise, the question of whether the defendant acted with the requisite criminal intent also presented a question for the jury and " 'shall not be disturbed by this court unless it is contrary to the evidence and clearly erroneous.' "[6] Moreover, "[a] person commits the offense of aggravated assault when he or she assaults: . . . (2) With a deadly weapon . . . which, when used offensively against a person, is likely to or actually does result in serious bodily injury."[7] The facts here clearly show that Bonner and Malcom reacted defensively and aggressively upon realizing defendant had taken them under fire from close range. This was sufficient circumstantial evidence to show that they had been placed in reasonable apprehension of immediately receiving violent injury.[8] Consequently, we conclude that a jury could have found the defendant guilty beyond a reasonable doubt of aggravated assaults upon Bonner and Malcom.

2. Defendant further contends that the superior court erred in considering a presentence report showing his prior criminal history for lack of notice thereof before trial in violation of OCGA § 17-10-2 (a). He argues that his prior convictions were used in aggravation to determine sentence and that the court abused its discretion by imposing sentences grossly disproportionate to the crimes of which he was convicted, in effect, sentencing him for the murder of which he was acquitted. We disagree.

"Trial courts are permitted to consider presentence reports when deciding whether to suspend or probate all or part of a sentence, although such reports cannot be used to determine the length of a

---

[4] (Citations and punctuation omitted.) *Howard v. State*, 227 Ga. App. 5, 8 (6) (a) (488 SE2d 489).

[5] *Norris v. State*, 258 Ga. 889, 890 (1) (376 SE2d 653), overruled on other grounds, *Johnson v. State*, 272 Ga. 254, 255 (1) (526 SE2d 549).

[6] (Citations omitted.) *Peterson v. State*, 204 Ga. App. 532, 533 (1) (419 SE2d 757).

[7] OCGA § 16-5-21 (a).

[8] *Lewis v. State*, 215 Ga. App. 161, 163 (2) (450 SE2d 448).

sentence."[9] Further, "[i]f the State intends to introduce evidence that defendant is a recidivist for sentencing purposes, it must notify defendant of any conviction it intends to use in aggravation of punishment pursuant to OCGA § 17-10-2 (a)."[10] While defendant contends that he did not receive proper notice, " '[defendant's] counsel did not object to the admission of [his] (prior) convictions and affirmatively stated that he did not contest their admission,[11] thereby waiving error.' "[12]

Neither is there merit in defendant's claim that the superior court abused its discretion by imposing an excessive sentence against him. The superior court imposed sentences of imprisonment well within statutory limits,[13] a portion of which was imposed to run concurrently and the remainder probated. " 'A determinate sentence which falls within statutorily mandated parameters is not subject to attack on Eighth Amendment grounds. [Cits.]' "[14] Accordingly, this claim of error is likewise without merit.

*Judgment affirmed. Pope, P. J., and Miller, J., concur.*

DECIDED MAY 31, 2000 —
RECONSIDERATION DENIED JUNE 27, 2000 ▮

*James C. Bonner, Jr., Arthur L. Gibson, Jr.,* for appellant.
*Fredric D. Bright, District Attorney, Richard M. Gailey, Jr., Assistant District Attorney,* for appellee.

---

[9] *Denny v. State*, 226 Ga. App. 432, 436 (13) (486 SE2d 417).
[10] (Citations and punctuation omitted.) *Howard v. State*, 233 Ga. App. 724, 726 (1) (a) (505 SE2d 768).
[11] Pertinently, defendant's counsel stated that the presentence report "summarizes fairly well background information I wanted the court to have. . . ."
[12] Id.
[13] The superior court was authorized to impose a maximum sentence of eighty years confinement upon the four counts of aggravated assault of which defendant was convicted. OCGA § 16-5-21 (b).
[14] *Inglett v. State*, 239 Ga. App. 524, 529 (9) (521 SE2d 241), citing *Pollard v. State*, 230 Ga. App. 159, 161 (5) (495 SE2d 629).