## A02A1524. GRAY v. THE STATE.
(571 SE2d 435)

PHIPPS, Judge.

Quentin Gray was tried by a jury and convicted of four counts each of aggravated assault and possession of a weapon during the commission of a crime and one count of theft by receiving stolen property. On appeal, he claims that the trial court abused its discretion by denying his motion to sever Counts 5 and 6 of the indictment (robbery and theft by receiving stolen property) and that the evidence was insufficient to support his convictions for aggravated assault and theft by receiving stolen property. Finding no abuse of discretion and finding the evidence sufficient to support the challenged convictions, we affirm.

Viewed in the light most favorable to the verdicts, the evidence showed that on May 5, 1999, Orlando Shannon drove to a Circle K convenience store to get gas and saw a Buick driven by Quentin Gray drive into the station. Wilfred Ford was a passenger in the Buick. Gray spoke to Shannon, accusing him of robbing his cousin, and Ford threatened Shannon. Moments later Ford and Shannon began fighting, and Ford grabbed Shannon's watch, bracelet and necklace. During the fight, Gray threatened to shoot Shannon. Gray told Shannon that he would kill him if he found him in the neighborhood again.

Later that day, Anthony Tolbert was driving a Toyota with passengers Brian Tolbert, Willie Triplett and Triplett's children. Tolbert noticed a Buick at a stop sign with four men in it. Ford, Quentin Gray, Timothy Gray (Quentin's brother) and another man were in the Buick. Quentin Gray stepped out of the Buick and yelled something at Tolbert, which caused Tolbert to assume that the four men were looking for trouble. Tolbert dropped the children off in the neighborhood, and thereafter the Buick blocked the Toyota's path. Gray asked, "what's up, what ya'll want to do now." Tolbert drove around the Buick, but it followed them.

Tolbert saw Ford lean out the window and point a 9 millimeter handgun toward his car. Tolbert accelerated to get away and ultimately lost control of the car, which skidded and came to a stop. The Buick followed and stopped behind Tolbert's car. When Ford stepped out of the car with a handgun, Tolbert, who had a .32 caliber handgun, fired a shot, and Ford got back in the car. Quentin Gray then got out of the Buick and began shooting at Tolbert's car with a 9 millimeter handgun. Tolbert drove away while Gray was shooting and heard at least one bullet hit his car and another go past the front seat passenger's head. Tolbert testified that Quentin Gray was driving the Buick during this encounter, but Ford testified that Timothy Gray was driving.

Regina Ramsey lived nearby and was in her house at the time. After she heard her patio door explode, she felt a burning sensation and realized she had been injured. She then heard more gunshots. An investigator with the Clayton County Sheriff's Office found fourteen 9 millimeter shell casings and seven .32 caliber casings at or near the scene. One casing was found within 50 feet of Ramsey's house, which was almost 400 feet from the intersection where the shooting took place. The .32 caliber casings were all found near the intersection, whereas the 9 millimeter casings were spread out.

During the shooting, Shannon's jewelry was in the front seat of the Buick. At some point after the shooting, Ford, Quentin Gray and Timothy Gray went to a pawnshop, and Ford pawned the jewelry for $15. Ford spent the $15 at a package store and gave Quentin Gray one of the beers he purchased. Quentin Gray lived within a mile of the location of the Circle K where Shannon was robbed and the intersection where the shooting took place. The same detective investigated the incident at the Circle K and the shooting.

1. Gray challenges the sufficiency of the evidence to support his convictions for the aggravated assault of Anthony Tolbert, Brian Tolbert, Willie Triplett and Regina Ramsey and his conviction for theft by receiving stolen property.

On appeal from a criminal conviction, the evidence is viewed in the light most favorable to the jury's verdict to determine whether it is sufficient under the standard of *Jackson v. Virginia*.[1] Conflicts in the testimony of witnesses are a matter of credibility for the jury to resolve.[2]

(a) With respect to the aggravated assault charges, Gray argues that there is insufficient evidence (1) that he intended to hurt or harm anyone or (2) that his actions were not justified.

(i) The pertinent essential elements of aggravated assault are an assault on a person as defined in OCGA § 16-5-20 and use of a deadly weapon.[3] "[I]ntent to injure is not an element of aggravated assault with a deadly weapon when the assault element is predicated on OCGA § 16-5-20 (a) (2)."[4] Instead, the focus is on the victim's state of mind and the only intent that must be shown is the criminal intent to commit the acts that caused the victim to be reasonably apprehensive of receiving a violent injury.[5] The evidence clearly showed that Gray had the intent to fire the gun at the car occupied by Anthony

[1] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979); *Etheridge v. State*, 249 Ga. App. 111 (1) (547 SE2d 744) (2001).

[2] Id. at 112.

[3] OCGA § 16-5-21 (a) (2).

[4] *Jay v. State*, 232 Ga. App. 661, 662 (1) (503 SE2d 563) (1998).

[5] *Dunagan v. State*, 269 Ga. 590, 594 (2) (b) (502 SE2d 726) (1998).

Tolbert, Brian Tolbert and Willie Triplett. No further proof of intent was necessary.

The doctrine of transferred intent is applicable to Gray's aggravated assault against Ramsey.

> When an unintended victim is struck down as a result of an unlawful act actually directed against someone else, the law prevents the actor from taking advantage of his own wrong and transfers the original intent from the one against whom it was directed to the one who actually suffered from it. In legal contemplation, the intent follows the act through to its legitimate results.[6]

Accordingly, the evidence was sufficient to find that Gray's intent to fire the gun at someone was transferred to Ramsey, although she was not the intended target.

(ii) A person is justified in using force that is intended or likely to cause death or great bodily harm only if he reasonably believes that such force is necessary to prevent death or great bodily injury to himself or someone else.[7] A person is not justified in using force under such circumstances if he "[i]nitially provokes the use of force against himself with the intent to use such force as an excuse to inflict bodily harm upon the assailant" or if he was the aggressor.[8]

Whether the circumstances of any confrontation "were such as to excite the fears of a reasonable person that he had to use deadly force in order to prevent the use of deadly force against him" is a matter to be determined by the jury.[9] Similarly, whether Gray provoked the use of force or was the aggressor was a matter for the jury to resolve.[10] The jury was adequately instructed on the use of force in defense of self or others and obviously concluded that Gray's actions were not justified.

(b) With respect to the theft by receiving stolen property conviction, Gray argues that there is no evidence that he received any money from Ford.

"A person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which

---

[6] (Citation and punctuation omitted.) *Harris v. State*, 233 Ga. App. 696, 697-698 (505 SE2d 239) (1998).

[7] OCGA § 16-3-21 (a).

[8] OCGA § 16-3-21 (b) (1), (3).

[9] (Citations and punctuation omitted.) *Knight v. State*, 271 Ga. 557, 559 (1) (521 SE2d 819) (1999).

[10] See *Palmore v. State*, 264 Ga. 108 (441 SE2d 405) (1994); *Knox v. State*, 254 Ga. App. 870, 872 (564 SE2d 225) (2002).

he knows or should know was stolen."[11] The indictment charged Gray with retaining Shannon's jewelry.

The evidence showed that Gray was present when Ford took the jewelry from Shannon; that he was driving the car when Ford placed the jewelry in the front seat; that the jewelry was still in the front seat of the car Gray was driving (or riding in) several hours later and that he was in the car when Ford went into the pawnshop with the jewelry and returned with $15 — but without the jewelry. "This evidence, combined with permissible inferences raised by the evidence, was sufficient to permit a rational trier of fact to find [Gray] guilty beyond a reasonable doubt of theft by receiving stolen property" as charged in the indictment.[12]

2. Gray claims that the trial court abused its discretion by refusing to sever the offenses of robbery and theft by receiving stolen property for trial.

> Two or more offenses may be tried together if they: (a) are of the same or similar character, even if not part of a single scheme or plan; or (b) are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan. Where two or more offenses are joined only because they are of the same or similar character, the trial court, upon motion of the defendant, must order separate trials for each of the offenses. But when they are based on the same conduct or on a series of acts connected together or constituting parts of a single scheme or plan, the court in the interest of justice may order that one or more of such charges be tried separately.[13]

Here, all of the alleged crimes occurred on the same day, in the same vicinity and involved some of the same evidence and witnesses. Thus, the offenses were not joined solely because they were of the same or similar character, and the trial court had discretion whether to sever the offenses for trial.[14]

In exercising this discretion, the trial court " 'should consider whether(,) in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently as to each offense.' "[15] Although Gray was charged with ten offenses, the same

---

[11] OCGA § 16-8-7 (a).

[12] *Wilson v. State*, 227 Ga. App. 59, 60-61 (1) (488 SE2d 121) (1997).

[13] (Citations, punctuation and emphasis omitted.) *Ridgeway v. State*, 174 Ga. App. 663, 664 (2) (330 SE2d 916) (1985).

[14] Id.

[15] *Sanders v. State*, 236 Ga. App. 578, 580 (1) (b) (512 SE2d 678) (1999).

straightforward evidence was used to prove most of them. The trial court instructed the jury to consider each count separately, and the jury announced its verdict on each count separately.[16] "We do not find the number of offenses charged in this case, nor the complexity of the evidence, to be such that the trial court abused its discretion in denying [Gray's] motion to sever."[17]

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED SEPTEMBER 16, 2002.

*Brown & Gill, Angela Y. Brown,* for appellant.
*Robert E. Keller, District Attorney, Erman J. Tanjuatco, Assistant District Attorney,* for appellee.

---

[16] See id.
[17] *Lane v. State,* 210 Ga. App. 738, 740 (1) (437 SE2d 479) (1993).