A04A1842. LEMMING v. THE STATE.
(612 SE2d 495)

PER CURIAM.

Following a jury trial, Steve John Lemming appeals his conviction of two counts of aggravated assault[1] and one count of criminal attempt to commit armed robbery,[2] contending that: (1) the evidence was insufficient to support his convictions; and (2) he received ineffective assistance of counsel.[3] For the reasons set forth below, we affirm.

1. Lemming maintains that the evidence was insufficient to support his convictions. The standard of review is well settled.

On appeal from a criminal conviction, the evidence must be construed in the light most favorable to the jury's verdict,

---

[1] OCGA § 16-5-21.

[2] OCGA § 16-4-1.

[3] We note that Lemming received the same sentence, fifteen years with eight years to serve, on both Counts 1 and 2, the aggravated assault counts, sentences to run concurrently, and that he was not sentenced on Count 3, which merged with the aggravated assault charges.

and the defendant no longer enjoys the presumption of innocence. An appellate court does not weigh the evidence or judge the credibility of the witnesses but only determines whether the evidence to convict is sufficient under the standard of *Jackson v. Virginia*.[4] Conflicts in the testimony of the witnesses, including the State's witnesses, are a matter of credibility for the jury to resolve. So long as there is some competent evidence, even though contradicted, to support each element of the State's case, the jury's verdict will be upheld.[5]

Viewed in this light, the record shows that, on the evening of April 10, 2002, Lemming jumped behind the counter at a Waffle House restaurant and attacked a waitress, Elizabeth Sutton, placing a filed-down "pocket paring knife" against her neck. Sutton screamed, and when Darryl Finley, the cook, approached, Lemming warned, "I'll stick her. I'll stick her" and "pok[ed] the knife in her face." Responding "the 'f' you will," Finley hit Lemming with a broom and tried to pull Sutton away from Lemming. Lemming then jabbed the knife at Sutton and, in the process, cut Finley's finger. Finley then punched Lemming with his left hand. After a few more swings of the broom, Lemming ran from the restaurant, and Finley chased after him but failed to catch up to him.

After the incident, police who responded to the scene found Lemming in the woods behind the restaurant. When asked about the knife, Lemming responded, "I tossed it when I ran into the woods." Following the reading of his *Miranda* rights, Lemming admitted that he had attempted to rob the restaurant and that he had put a knife to a waitress's throat.

The evidence was sufficient to allow a rational trier of fact to find Lemming guilty beyond a reasonable doubt of criminal attempt to commit armed robbery and of aggravated assault on the waitress, Sutton, and on the cook, Finley. Lemming argues that Finley's testimony that he did not perceive Lemming's knife to be a threat would preclude the conviction for aggravated assault on Finley because there was no evidence that Finley was apprehensive. We disagree.

A person commits the offense of aggravated assault when he uses a deadly weapon to commit an act which places

---

[4] 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

[5] (Citation and footnote omitted.) *Krauss v. State*, 263 Ga. App. 488 (1) (588 SE2d 239) (2003).

another in reasonable apprehension of immediately receiving a violent injury. Whether a victim has been placed in reasonable apprehension of injury is a question of fact, which may be established by indirect or circumstantial evidence.[6]

Our Supreme Court has held that the statute's requirement that the victim be "in reasonable apprehension" does not mean that the victim must be in fear. In *Bates v. State*,[7] a unanimous Court explained as follows:

Bates contends that the trial court erred in responding to two jury questions. First, when asked to clarify "reasonable apprehension," the court answered in part, that "the law of Georgia does not appear to require fear as an element of apprehension." Although Bates argues that, in the context of the statutory definition of assault, the victim must be in a state of fear, that is not correct. "Reasonable apprehension of injury is not the same as simple fear," and the fact that the victim does not necessarily experience fear does not preclude a finding of reasonable apprehension.[8]

If "reasonable apprehension" does not mean "simple fear," what does it mean? In Webster's Third New International Dictionary, the first two nonobsolete meanings of "apprehension" are: "the faculty of grasping with the intellect" and "the act of grasping with the intellect."[9] Synonyms of apprehension include intellection and perception. It is only the third meaning of apprehension, according to Webster's Dictionary, that includes a sense of fear.[10] The Supreme Court, as well as our Court, seems to have interpreted the statute to require not that the victim have a reasonable *fear* of immediately receiving a violent

---

[6] (Footnote omitted.) *Jackson v. State*, 251 Ga. App. 578, 579 (1) (554 SE2d 768) (2001), citing OCGA §§ 16-5-20; 16-5-21.

[7] 275 Ga. 862 (572 SE2d 550) (2002).

[8] (Punctuation omitted.) Id. at 865 (4), citing *Carter v. State*, 248 Ga. App. 139 (1) (546 SE2d 5) (2001); *Hicks v. State*, 211 Ga. App. 370, 373 (1) (439 SE2d 56) (1993). Accord *Lunsford v. State*, 260 Ga. App. 818, 821 (2) (581 SE2d 638) (2003).

[9] Webster's New Intl. Dictionary (Unabridged) (1976), p. 106. The Supreme Court's interpretation of "apprehension" is also supported by The Oxford English Dictionary, which, after providing three meanings of physical apprehension, provides as the first mental sense of the word "[t]he action of learning, the laying hold or acquirement of knowledge." The Compact Edition of the Oxford English Dictionary, Oxford University Press (1971), Vol. I, p. 103. Other meanings provided by Oxford include "[t]he action of grasping with the intellect; the forming of an idea; conception; intellection" and "[t]he product of grasping with the mind." The twelfth sense provided is "[f]ear as to what may happen; dread." Id.

[10] The order of senses is historical. See Webster's, supra, Explanatory Note 12.5, p. 17a.

injury but rather that the victim have a reasonable *perception* that he is about to receive a violent injury. According to the case law, that perception can be prompted by acts involving knives as well as acts involving firearms.[11]

The victim's apprehension or perception can be proved by circumstantial or indirect evidence as well as by direct or positive evidence.[12] Moreover, in Georgia, positive evidence of an adamant denial of apprehension by the victim does not preclude conviction when there is some circumstantial evidence from which the jury could infer a perception of danger.[13] Georgia precedents involve a knife as well as firearms.[14] Decisions in other jurisdictions support the Georgia view.[15] Moreover, evidence of the state of mind of one victim can be relevant to the state of mind of other victims.[16]

What was the circumstantial evidence in this case from which the jury could have inferred that the victim perceived, in advance, the imminent threat of the bloody wound which he did, in fact, eventually receive? The record shows the following:

1. Lemming, the defendant, entered the premises with the specific intent of frightening the Waffle House's "Employees" (plural).

2. Finley, the cook, was an employee of the Waffle House and hence an intended victim.

3. Lemming acted in an excited, violent manner, jumping over the counter, grabbing Sutton, the waitress, and making verbal threats toward her.

4. Lemming was brandishing a knife. Although the knife was tiny, it was apparently adequate to place the waitress in reasonable apprehension of immediately receiving a violent injury. We have previously ruled that "the presence of a knife would normally place a victim in [such] apprehension."[17] Finley was within a broomstick's length of Lemming and his tiny knife, and was closing the distance

---

[11] See, e.g., *Carter*, supra at 139-140 (1).

[12] *Jackson*, supra.

[13] *Lunsford*, supra (gun) ("I was never at any point afraid of him") (punctuation omitted); *Carter*, supra (knife of unspecified size); *Hicks*, supra (miscellaneous firearms).

[14] Id. See also *Gordian v. State*, 261 Ga. App. 75, 76 (1) (581 SE2d 616) (2003) (police said victim "look[ed] fearful" of gun although she testified that she was "not fearful").

[15] See, e.g., *State v. Vontress*, 88 P3d 807 (Kan. App. 2004) (unpublished) (knife); *State v. LaMere*, 190 Mont. 332, 336 (621 P2d 462) (1980) (same).

[16] *Jackson*, supra. In *Jackson*, the gun was pointed at all three victims. In the case at bar, there was some evidence that the tiny knife was "jabbed" at both victims.

[17] *State v. Bolman*, 222 Ga. App. 534, 535 (474 SE2d 721) (1996). In theory there could perhaps be some knives so designed and constructed that they are not deadly weapons within the meaning of OCGA § 16-5-21. But in Georgia what is or is not a deadly weapon is a question of fact for the jury. See, e.g., *Knox v. State*, 254 Ga. App. 870, 871-872 (564 SE2d 225) (2002) (whether milk crate was a deadly weapon was jury question); *Wheeler v. State*, 232 Ga. App. 749, 750 (503 SE2d 628) (1998) (telephone receiver); *Sexton v. State*, 189 Ga. App. 331, 332 (3) (375

fast in an attempt to rescue Sutton.

5. Finley's co-worker, Sutton, was terrified and thought that she was going to die.

6. Although the evidence is in conflict, there was some testimony from which the jury could have concluded that Lemming "jabbed" the tiny knife at Finley as well as at Sutton, as illustrated by the following colloquy between the prosecutor and Finley.

Q. [W]hat, if any, movement of the knife did you observe?
A. As I said before, when I went to pull her behind, he jabbed and stuck me in the finger.
Q. But is jabbed your word not mine?
A. Yes.
Q. When the jabbing occurred, were both you and Elizabeth [Sutton] within range of the jabbing?
A. Yeah.

The fact that Lemming jabbed the tiny knife at Finley as well as at Sutton is important because the state of mind of one victim is evidence of the state of mind of another only when the weapon is pointed at all of the victims.[18] Also, it defies belief that a human being could see a tiny knife being jabbed at close range in his direction and fail to perceive the distinct possibility that it might cut him.

7. The tiny knife had its tiny blade exposed and ready for business, rather than being folded as most key chain knives can be. The evidence that the blade was exposed in a threatening manner was twofold: its appearance was enough to frighten Sutton and it succeeded in cutting Finley.

8. Although the knife was not recovered and not entered into evidence, it was described by this victim, Finley, as "a little pocket paring knife . . . [o]ne of those little key chain knives that had been filed down." Although it would have been a fair inference that "filed down" meant shortened to an even more tiny size, the jury might also have inferred that "filed down" meant sharpened. What inference the jury actually did draw, if any, is speculative. But on appeal of a criminal conviction, all evidence is viewed favorably to the verdict.[19]

9. Finley was actually cut by Lemming's knife. The wound may have occurred in the general melee while Lemming was trying to cut Sutton. But the evidence also supports an inference that Lemming deliberately jabbed the knife at Finley (see no. 6, above).

---

SE2d 661) (1988) (pocketknife); *Spaulding v. State*, 185 Ga. App. 812, 813 (1) (366 SE2d 174) (1988) (automobile).

[18] *Jackson*, supra.

[19] *Hill v. State*, 269 Ga. App. 459 (604 SE2d 300) (2004).

In contradiction to the circumstantial evidence listed above, there was direct evidence that Finley had no perception of a threat from the knife.[20] The most telling evidence on this point is contained in the following exchange between the prosecutor and the victim Finley:

Q: Did you consider the knife to pose a threat toward you?
A: Yeah, well, not to me, to her.

If we were weighing the evidence, we might find that this positive evidence that Finley did not perceive the possibility that he would be injured outweighed the circumstantial evidence that he did. But on appeal we do not weigh evidence or determine witness credibility; we only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt.[21] We view the evidence in the light most favorable to the verdict.[22] "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld."[23] The nine pieces of circumstantial evidence listed above, when viewed in the light most favorable to the verdict, require us to affirm the conviction.

In addition, the evidence supports the finding that Finley sustained a violent, albeit, superficial, injury. In this regard, the statute cited in the indictment, OCGA § 16-5-21, requires that an aggravated assault be made with a deadly weapon, i.e., a weapon capable of producing death, which is the most severe possible injury. But an assault per OCGA § 16-5-20 (a) (2) requires only that the victim be in reasonable apprehension (i.e., perception) of receiving a "violent injury." Thus, a conviction for aggravated assault does not require that the victim perceive the onset of a deadly or severe injury, but

---

[20] We note that if the case at bar were a civil lawsuit being reviewed on appeal after the grant or denial of a motion for summary judgment, the positive, direct testimony by Finley would be more than enough to make the circumstantial evidence of Finley's perception evaporate. When we review a summary judgment, the rule is that "a finding of fact which may be inferred but is not demanded by circumstantial evidence has no probative value against positive and uncontradicted evidence that no such fact exists." *Backus v. Ray Jones, Inc.*, 150 Ga. App. 753, 756 (258 SE2d 693) (1979). But on review of a judgment entered after a jury trial, the rule has been for more than a century in criminal and civil cases that "[c]ircumstantial evidence may outweigh positive evidence in probative value." (Citations omitted.) *Stephens v. State*, 127 Ga. App. 416, 425 (5) (193 SE2d 870) (1972). Accord *Minter v. Kent*, 62 Ga. App. 265, 272 (8 SE2d 109) (1940); *Jefferson Standard Life Ins. Co. v. Bentley*, 55 Ga. App. 272, 279 (190 SE 50) (1937); *J. S. & L. Bowie & Co. v. Maddox & Goldsmith*, 29 Ga. 285, 287 (1859).

[21] *Jackson v. Virginia*, supra.

[22] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).

[23] (Citation and punctuation omitted.) *Jackson v. State*, 236 Ga. App. 260, 261 (511 SE2d 615) (1999).

merely a "violent injury" from a weapon which is capable of causing death. Being unwillingly cut by an assailant, however superficially, is clearly a violent injury. There was ample evidence to support the jury's conclusion that Finley perceived the immediate reception of the superficial but violent wound.

In response to a leading question, Finley opined that the cut he suffered was superficial.

Q. And the cut you received, would you say it was a superficial cut? It was a small cut?
A. Yeah.

But a truck driver who witnessed the attack described the injury somewhat differently.

Q. Did you ever actually see anyone get stabbed?
A. No. The only thing I saw as far as blood was the injury the cook had sustained.
Q. Okay. And what kind of injury was that?
A. I'm not a doctor. I couldn't tell you.
Q. Did he have a small injury or was it a big injury?
A. I know he was bleeding pretty good from his thumb.

Considering all the evidence, and construing it as we must in favor of the verdict, we affirm Lemming's conviction for aggravated assault on Finley, the cook, who did suffer a violent injury, as well as his conviction for the assault on Sutton, the waitress, who was not in fact injured. We also affirm Lemming's conviction for criminal attempt to commit armed robbery.

2. Lemming also argues, on various grounds, that he received ineffective assistance of counsel.

In order to establish ineffectiveness of trial counsel under *Strickland v. Washington*, 466 U. S. 668, 687 (104 SC 2052, 80 LE2d 674) (1984), [Lemming] must show both that counsel's performance was deficient and that the deficient performance prejudiced the defense. Unless a defendant makes both showings, it cannot be said that the conviction resulted from a breakdown in the adversary process that renders the result unreliable. In addition, there is a strong presumption that trial counsel's performance falls within the wide range of reasonable professional assistance and that any challenged action might be considered sound trial strategy. In the absence of testimony to the contrary, counsel's actions are presumed strategic. The trial court's determination that

an accused has not been denied effective assistance of counsel will be affirmed on appeal unless that determination is clearly erroneous.[24]

Lemming's first assertion of ineffective assistance of counsel concerns the testimony of the psychologist who testified on his behalf with regard to his mental condition; during questioning by Lemming's trial counsel, the psychologist made three passing references to the fact that Lemming was in jail when he examined him and prepared his report. Lemming asserts that he was denied effective assistance of counsel because trial counsel failed to instruct the psychologist not to mention Lemming's incarceration, and that the references to Lemming's incarceration placed his character in evidence. This assertion of ineffective assistance of counsel fails to satisfy either prong of *Strickland*.

First, at the hearing on the motion for new trial, trial counsel testified that she had in fact told the psychologist not to mention, while testifying, that Lemming was in jail. The trial court was entitled to believe trial counsel's testimony that she properly instructed the psychologist.[25] Second, a passing reference to a defendant's "having been 'in jail' [does] not impermissibly place his character in evidence."[26] Lemming thus fails to show either attorney error or actual prejudice.

Lemming also contends that trial counsel's assistance was ineffective because she failed to object when the prosecutor referred to him as the "bad guy." The reference about which Lemming complains occurred during the direct examination of Finley. The prosecutor had asked Finley to step down and demonstrate where he, Sutton, and Lemming had been in relation to each other when the attack on Sutton occurred. The prosecutor, taking the role of Sutton, asked Finley to stand at the same distance from him that Finley was from Sutton when Lemming attacked. The prosecutor then asked Finley to take the role of Lemming while he took the role of Sutton and asked Finley to show how Lemming was touching Sutton and what their relative positions were. Continuing with the reenactment, the prosecutor then said, "Stay here just for a second, please. We don't have a third person to throw into the mix. But you are not in this scenario between you and I the bad guy and the victim. But where are you?"

---

[24] (Citation and punctuation omitted.) *Herndon v. State*, 235 Ga. App. 258 (509 SE2d 142) (1998).

[25] *Coggins v. State*, 275 Ga. 479, 482 (3) (569 SE2d 505) (2002).

[26] (Citations omitted.) *Gordon v. State*, 273 Ga. 373, 379 (4) (f) (541 SE2d 376) (2001).

In the context in which the prosecutor made his remark, the term "bad guy" was used to designate Finley's role in the reenactment of the assault on Sutton, not to improperly inject Lemming's character into evidence. As in *Salgado v. State*,[27] "[w]e cannot find that the use of the term 'bad guy[ ]' in this manner improperly injected [Lemming's] character into evidence."[28] However, even assuming that the comment was improper, Lemming has failed to show actual prejudice resulting from trial counsel's failure to object to the use of the term.[29]

Lemming's next claim of ineffective assistance of counsel involves the testimony of Douglas Eberhardt and Shawn Kerr, two customers who were in the restaurant at the time of the crimes and who were called as defense witnesses at trial. On direct examination, Eberhardt testified that he had not seen a knife during the attack and that he thought he would have seen a knife if Lemming had been holding one to Sutton's throat. On cross-examination, however, Eberhardt was shown a statement he had given to the police about an hour after the incident in which he had stated that Lemming had "jumped over the counter and started to attack the waitress with a knife." When shown his earlier statement, Eberhardt admitted, "If I did say that then, yeah, that would be what I would have seen at that time."

Kerr, during direct examination, made no reference to a knife, and he said that Lemming was just swinging his arm. He, too, however, was shown the statement he had given to the police following the incident in which he related that Lemming had come into the Waffle House, "[j]umped the counter and tried to stab waitress." When he tried to explain his failure to mention the knife, the prosecutor asked, "Okay, so now your testimony definitively is you saw that man try to stab the Waffle House employees?" Kerr replied, "Yes."

After the testimony of Eberhardt and Kerr, Lemming's trial counsel called a private investigator to the stand to have him testify that statements that Eberhardt and Kerr had made to him contradicted their respective statements to the police. The trial court, however, refused to allow this attempt at impeaching Eberhardt's and Kerr's testimony because trial counsel had failed to lay a proper foundation for impeachment. Lemming argues that trial counsel's performance was deficient because she failed to take the proper steps to impeach the witnesses.

We agree that trial counsel's attempts to impeach Eberhardt and Kerr reveal a misunderstanding as to the steps necessary to proper

---

[27] 268 Ga. App. 18 (601 SE2d 417) (2004).

[28] (Footnote omitted.) Id. at 22 (2).

[29] *Gordon*, supra.

impeachment pursuant to OCGA § 24-9-83. However, it is clear that, even if the witnesses had been properly impeached through use of the statements they made to the private investigator, Lemming cannot show that the outcome of the trial would have been different. Both Eberhardt and Kerr, when shown the statements they made to the police that Lemming had tried to stab the waitress, expressed their belief that those statements, made shortly after the incident, were correct as to what had happened rather than their court testimony based on current memory of what had happened a year and a half earlier. Moreover, Officer Everson testified that Lemming had told him that he had a knife and had put it to a waitress's throat.

Finally, Lemming contends that he was denied effective assistance of counsel because trial counsel failed to introduce in evidence a copy of a check for $17,500 he received days before the crimes from a personal injury settlement. Lemming argues that evidence that he had received a large sum of money "would have negated any possible motive [he] may have had to commit the offense of criminal attempt to commit armed robbery."

Again, Lemming fails to show the necessary prejudice. Trial counsel elicited testimony from both Lemming's uncle and Lemming himself concerning the settlement he had received as a result of his injury. The assertion that producing a copy of the settlement check would change the outcome of the trial when testimony concerning the settlement did not have that effect is mere speculation. "[S]uch speculation raises no more than a mere possibility, a showing which is insufficient in these circumstances."[30]

*Judgment affirmed. Andrews, P. J., Mikell and Adams, JJ., concur. Bernes, J., concurs fully and concurs specially as to Division 1. Ruffin, C. J., Blackburn, P. J., and Barnes, J., concur as to Division 2 and dissent as to Division 1.*

BERNES, Judge, concurring fully and specially.

Although I concur fully with the majority opinion, I write separately to set forth an additional reason why I believe there was sufficient evidence authorizing the jury to conclude that Steve John Lemming placed Waffle House cook, Darryl Finley, in reasonable apprehension of immediately receiving a violent injury.[31]

---

[30] (Citations omitted.) *Bogan v. State*, 249 Ga. App. 242, 245 (2) (b) (547 SE2d 326) (2001).

[31] I agree with the dissent that the State would be in a stronger evidentiary position had Lemming been charged in the bill of indictment with attempting to commit a violent injury upon Finley, rather than with placing Finley in reasonable apprehension of immediately receiving a violent injury. Under OCGA § 16-5-20 (a) (1), (2), assault may be proven in either of these two ways, and the former would have been easier to prove in this case, in light of the evidence in the record. Nevertheless, unlike the dissent, I believe that there was at least some circumstantial

"Whether a victim has been placed in reasonable apprehension of injury is a question of fact, which may be established by indirect or circumstantial evidence." (Footnote omitted.) *Jackson v. State*, 251 Ga. App. 578, 579 (1) (554 SE2d 768) (2001). "[P]roof that the victim has been placed in apprehension of immediately receiving a violent injury need not necessarily be solely by reason of the victim's testimony of his mental state but may be inferred from the conduct of the victim. . . ." (Citations omitted.) *Hurt v. State*, 158 Ga. App. 722, 723 (282 SE2d 192) (1981).

The circumstantial evidence of record, including Finley's own conduct, authorized the jury to infer that Finley was in reasonable apprehension of suffering immediate violent injury from Lemming. See *Payne v. State*, 195 Ga. App. 523, 525 (4) (394 SE2d 781) (1990) (reasonable apprehension "may be inferred from the conduct of the victim") (citation omitted). After Lemming jumped over the counter and placed his sharpened paring knife up to the neck of Waffle House waitress, Elizabeth Sutton, Finley did not simply approach Lemming. He came toward Lemming carrying a broomstick and immediately struck Lemming with the broomstick once he saw the knife. Finley testified: "And I looked in his hand and I saw the blade and I hit him with the broomstick."

After Lemming jabbed the knife at Sutton and Finley and cut Finley with the knife, Finley's "reaction was [to] hit him again." Finley hit Lemming with his left hand and attempted to hit him again with the broomstick. Finley attempted to hit Lemming with the broomstick a third time after Lemming jumped over the counter and onto a table.[32]

The defensive actions or maneuvers taken by Finley with the broomstick provided sufficient evidence that Finley had a reasonable apprehension of immediately receiving a violent injury. *Strange v. State*, 244 Ga. App. 635, 637 (1) (535 SE2d 315) (2000) (fact that victims reacted "defensively and aggressively" to gunshots provided "sufficient circumstantial evidence to show that they had been placed in reasonable apprehension of immediately receiving violent injury") (footnote omitted).[33] Finley's "measured steps to protect" himself and

---

evidence authorizing a jury to convict Lemming of aggravated assault against Finley as charged in the indictment.

[32] The dissent assumes that Finley's bravado and fearlessness in confronting and attacking Lemming evidences a lack of apprehension. If the dissent's reasoning were followed to its logical conclusion, we would be bound to reverse an aggravated assault conviction in a case where a police officer prolongs a confrontation by chasing down an armed defendant and testifies he did not have time to be afraid or think about any imminent threat of harm; he just reacted.

[33] See also *Tiller v. State*, 267 Ga. 888, 890 (3) (485 SE2d 720) (1997) (victim's defensive tactic of falling to ground to avoid injury evidenced victim's reasonable apprehension), overruled on other grounds, *Dunagan v. State*, 269 Ga. 590, 593 (2) (a), n. 3 (502 SE2d 726)

Sutton created an inference of reasonable apprehension, even though Finley testified he did not feel threatened. *Lunsford v. State*, 260 Ga. App. 818, 821 (2) (581 SE2d 638) (2003); *Carter v. State*, 248 Ga. App. 139, 140 (1) (546 SE2d 5) (2001).

Furthermore, that Finley took active steps to disable and apprehend Lemming makes this case similar to *Payne*, 195 Ga. App. at 525 (4). In that case, we held that a "trooper's decision to ram [the defendant's] vehicle in an attempt to disable it and prevent injury to anyone, was evidence of a reasonable apprehension of violent injury" by the trooper. Id. See also *Hicks v. State*, 211 Ga. App. 370, 371-373 (439 SE2d 56) (1993) (although victim testified that she was not afraid of the defendant, a finding of reasonable apprehension was nevertheless authorized when the defendant wielded his weapon in view of the victim and her family, and the victim then armed herself with a rifle, brandished it in front of the defendant, and exchanged gunfire).

Accordingly, I concur with the majority opinion holding that a rational trier of fact could have found beyond a reasonable doubt that Lemming used a deadly weapon to place Finley in reasonable apprehension of immediately receiving a violent injury and was thus guilty of aggravated assault upon Finley.

RUFFIN, Chief Judge, concurring in part and dissenting in part.

Like Judge Blackburn, I concur in Division 2 and I join in his dissent in Division 1. Thus, I am unable to agree with the majority with respect to Division 1.[34] Indeed, I am sufficiently troubled by the reasoning and result that I am compelled to write separately.

As noted by Judge Blackburn, the language of the indictment charged Lemming with committing an assault "by placing [Finley] in reasonable apprehension of immediately receiving a violent injury." (Punctuation and emphasis omitted.) Thus, the State was required to prove that *Finley* was apprehensive of a violent injury. Whether the waitress was apprehensive or whether Lemming intended that Finley be apprehensive are completely irrelevant to this inquiry.

Under the facts of this case, it strains credulity to conclude that Finley was apprehensive of any kind of injury, violent or otherwise. Both the direct evidence — Finley's testimony — and the circumstantial evidence — Finley's conduct in pursuing Lemming — demonstrate unequivocally that Finley lacked such apprehension under

---

(1998); *Payne*, 195 Ga. App. at 525 (4) (defensive driving maneuvers of state trooper during car chase evidenced trooper's reasonable apprehension of violent injury from fleeing driver).

[34] Although the opinion is per curiam, for ease of reading, I refer simply to the majority with respect to Division 1.

any definition of the word.[35] By permitting jurors to ignore the evidence that Finley lacked apprehension, the majority essentially creates a legal fiction. Now, any time a perpetrator engages in conduct that *may* be considered aggravated assault, the jury can find the person guilty of the crime regardless of whether there is evidence demonstrating actual apprehension on the part of the alleged victim. I see no purpose in the creation of such legal fiction, particularly where — as here — it truncates the necessary factual analysis.[36]

Moreover, the only evidence set forth in the majority's laundry list is circumstantial. Thus, assuming that this evidence is relevant, we still must consider whether Lemming's guilt for the offense of aggravated assault against Finley is the only reasonable hypothesis to be drawn from the evidence.[37] "This is so because under OCGA § 24-4-6, to warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but shall exclude every other reasonable hypothesis save that of the guilt of the accused."[38] Here, I find the only reasonable hypothesis is that Lemming failed miserably in his misguided attempt to inspire apprehension in Finley. Under these circumstances, Lemming's conviction for aggravated assault against Finley cannot stand.

I am authorized to state that Presiding Judge Blackburn and Judge Barnes join in this dissent.

BLACKBURN, Presiding Judge, concurring in part and dissenting in part.

Although I concur in Division 2 of this opinion, I must respectfully dissent separately from Division 1 and join in Judge Ruffin's separate dissent thereto. The evidence adduced at trial was not sufficient to support Steve John Lemming's conviction for aggravated assault against Darryl Finley because the State failed to prove that Finley was in apprehension of receiving a violent injury from Lemming.

Viewed in the light most favorable to the verdict, the record shows that, on the evening of April 10, 2002, Lemming jumped behind the counter at a restaurant and attacked a waitress, Elizabeth Sutton, placing a small, filed-down key chain knife against her neck.

---

[35] I am not persuaded by Judge Bernes' characterization of Finley's actions as "defensive." After Lemming attacked the waitress and threatened to harm her, Finley began beating Lemming with a broomstick. Thus, Finley was not defending himself so much as defending the waitress. Moreover, after the threat to the waitress had abated, Finley continued to chase Lemming, which belies the conclusion that his conduct was defensive.

[36] See *Parke v. Fant*, 260 Ga. App. 84, 86 (1) (578 SE2d 896) (2003).

[37] See *Baltazar v. State*, 254 Ga. App. 773, 774 (564 SE2d 202) (2002).

[38] (Punctuation omitted.) Id.

Frightened by this act, Sutton screamed. Finley, the cook, approached Lemming, who warned, "I'll stick her! I'll stick her!" Responding "the 'f' you will," Finley, acting without apprehension or even a perception of injury from Lemming's key chain knife, attacked Lemming with a broom and tried to pull Sutton away from Lemming. Lemming then jabbed the knife at Sutton and, in the process, cut Finley's finger. Finley then punched Lemming with his left hand and continued to attack him with the broom. After a few more swings of the broom, Lemming ran from the restaurant, and Finley aggressively chased after Lemming but failed to catch up to him. Finley later explicitly testified that he was not apprehensive of Lemming or his key chain knife. The evidence failed to satisfy this element of the crime as it was insufficient to show that Finley was in apprehension of receiving a violent injury from Lemming.

"A person commits the offense of aggravated assault when he uses a deadly weapon to commit an act which places another in reasonable apprehension of immediately receiving a violent injury." *Jackson v. State.*[39]

"Whether a victim has been placed in reasonable apprehension of injury is a question of fact, which may be established by indirect or circumstantial evidence." *Jackson,* supra at 579 (1). Thus, "proof that the victim has been placed in apprehension of immediately receiving a violent injury need not necessarily be solely by reason of the victim's testimony of his mental state but may be inferred from *the conduct of the victim* such as when he retreats to secure his safety." (Emphasis supplied.) *Hurt v. State.*[40]

In analyzing this case, we must be mindful of the fact that the evidence that *Finley* acted without apprehension or perception of injury is not in conflict.

[T]here was no conflict in the evidence for the [trier of fact] to resolve. Thus, as a matter of credibility, even if the [trier of fact] chose to disbelieve [Finley's] testimony [that he was not apprehensive], the [jury] was presented with no evidence by which to establish [a different] version of events. . . . Disbelief of a witness' testimony as to certain facts does not, by itself, factually establish the opposite conclusion so as to serve as proof thereof. "A fact is not proved unless it is established."

[39] *Jackson v. State,* 251 Ga. App. 578, 579 (1) (554 SE2d 768) (2001).
[40] *Hurt v. State,* 158 Ga. App. 722, 723 (282 SE2d 192) (1981).

(Emphasis omitted.) *State v. Gillette.*[41] And, in this case, the State failed to establish by any facts, either direct or circumstantial, that Finley was apprehensive of Lemming's small key chain knife.

The direct evidence, namely Finley's testimony, shows that he acted without apprehension or even the perception of receiving a violent injury from "[o]ne of those little key chain knives that had been filed down." He unequivocally testified that the knife posed no threat to him. In turn, the circumstantial evidence supported Finley's testimony. After seeing Lemming's key chain knife, Finley attacked Lemming with no apprehension of threat from the weapon. And, even when Lemming backed away, Finley, without apprehension, chased after Lemming. Unlike someone who was apprehensive, Finley vigorously confronted Lemming and attempted to prolong that confrontation even after Lemming fled. Neither this direct nor circumstantial evidence was disputed.

Under these circumstances, even if the jury disbelieved Finley's testimony that he was not apprehensive, disbelief of that testimony does not, by itself, factually establish the opposite conclusion that Finley was either apprehensive or perceived the threat of a violent injury. And, even in the absence of Finley's statement, the circumstantial evidence is not sufficient to show otherwise. *Gillette*, supra. To the contrary, as set forth above, the circumstantial evidence shows that he was not apprehensive. Accordingly, the State failed to satisfy its burden of proving this element of the crime charged in this case.

The difference between the position of this dissent and that of the majority is a simple one: this dissent finds that there is no evidence, direct or circumstantial, based on which the jury could conclude that the victim had a reasonable apprehension of violent bodily injury, and the majority finds that there was circumstantial evidence supporting the jury's conclusion. Given this unambiguous difference, speculating about the demeanor of witnesses and pondering the many dictionary definitions of the word "apprehension" is totally unnecessary and irrelevant. Here, the victim stated on the record that he had *no* apprehension under any definition of that term, and his overt actions supported his testimony. The only question before this Court is whether the jury was presented with other evidence of *the victim's* state of apprehension which would allow the jury to wholly disregard his actions and his testimony.

The majority lists nine pieces of supposed circumstantial evidence which it contends would support the jury's determination that, in spite of Finley's testimony to the contrary, he was apprehensive of

---

[41] *State v. Gillette*, 236 Ga. App. 571, 574 (512 SE2d 399) (1999).

injury from Lemming. Nothing in this list, however, addresses Finley's actions or reactions, only the actions and reactions of others. For example, the majority contends that the jury could determine that Finley was apprehensive because Lemming testified that he entered the restaurant with the intent of frightening the restaurant's employees and Finley was, indeed, an employee. Lemming's intention at the moment of entering the restaurant, however, simply has no bearing on Finley's subsequent reaction to Lemming's actions. In several more listings, the majority argues, in essence, that because Sutton was apprehensive, the jury could also find that Finley was apprehensive. Finley's testimony and the circumstantial evidence that Finley reacted without apprehension and affirmatively attacked Lemming with a broom vitiates the majority's argument on this point.

In reaching its conclusion, the majority relies on evidence regarding the actions and reactions of everyone other than Finley, despite his direct testimony as to his reaction and his conduct at the time. It was the apprehensive reactions of Finley which the State was required to prove under the indictment, absent direct evidence of Finley's state of mind, the law permits reliance on other facts to infer apprehension. The only evidence here of Finley's actions and reactions, whether direct or circumstantial, was that Finley had no apprehension of injury whatsoever, and thus there was no basis to rely on other factors. This is an undisputed fact which we are not at liberty to alter by focusing on the actions and reactions of others at the scene.

Furthermore, the result reached in this dissent was required by the crime for which Lemming was indicted and the failure of the State to prove the specific manner of committing the offense as alleged in the indictment.

Assaults may be committed in either of two ways: the perpetrator may attempt to commit a violent injury upon the victim or may commit an act which places the victim in reasonable apprehension of immediately receiving a violent injury. See OCGA § 16-5-20 (a) (1), (2). An offense becomes an aggravated assault if the perpetrator commits an assault in one of the ways set forth in OCGA § 16-5-21. See *Williams v. State*.[42]

In this case, Lemming was charged with committing an aggravated assault on the first victim with a knife by "*placing [the victim] in reasonable apprehension of immediately receiving a violent injury....*" (Emphasis supplied.) Thus, he was charged with committing an assault defined by OCGA § 16-5-20 (a) (2), and, to convict him of

---

[42] *Williams v. State*, 208 Ga. App. 12, 13 (430 SE2d 157) (1993).

that offense, the State was required to prove that Finley was placed in reasonable apprehension of receiving a violent injury. This victim testified that he was not placed in apprehension of receiving a violent injury, and the State produced no evidence from which the jury could have inferred that he apprehended such injury. Accordingly the State failed to prove that element of the offense.

Although the majority correctly states that our law does not require that the prosecution prove that the victim was placed in fear to prove an offense of assault, our law does require some evidence from which the jury could find that the victim was placed in reasonable apprehension of receiving a violent injury. In this case, however, no such evidence exists. The most telling evidence on this point is contained in the following exchange between the prosecutor and the victim Finley:

PROSECUTOR: Did you consider the knife to pose a threat toward you?
FINLEY: Yeah, well, not to me, to her.

If the State had alleged that Lemming committed an aggravated assault by attempting to commit a violent injury upon this victim, which the evidence showed that he did, he could have properly been convicted of that offense. Unfortunately, he was not charged with that crime, and in the absence of evidence that Finley was placed in reasonable apprehension of receiving a violent injury, Lemming's conviction for an aggravated assault upon Finley cannot stand.

The cases cited by the majority are distinguishable and do not support its conclusion. For example, none involves a situation in which the victim affirmatively testified that he was not apprehensive of violent injury. Furthermore, none includes a scenario in which the circumstantial evidence showed not only that the victim was not apprehensive but also that he was so unafraid that he attempted to prolong the confrontation by chasing down the defendant. As such, these cases cannot control the present matter in which the victim testified that he was not apprehensive and undisputedly acted in a manner showing he was not apprehensive.

The special concurrence, on the other hand, would create the requisite reasonable apprehension necessary to convict Lemming by unduly expanding the law regarding the "measured steps doctrine" and applying it in this case. The very cases cited in the special concurrence show, however, that the measured steps doctrine was never meant to apply to factual situations such as the present case.

In essence, the special concurrence holds that Finley's actions in response to Lemming's attack may be considered defensive actions to

protect himself, thereby showing that he was reasonably apprehensive. The underlying rationale appears to be that, because Sutton was fearful and apprehensive, one may infer that Finley was also, as Sutton's admitted fear was the only other evidence on this issue. Georgia law does permit the trier of fact to make such an inference where the evidence establishes the fear and apprehension of one victim and there is no evidence from which the mental state of the second victim can be determined, or where the attack is of such a nature that anyone would be apprehensive. It does not, however, permit such inference as to the second victim's mental state where there is direct, undisputed testimony and other evidence showing that the second victim was not apprehensive or in fear, and the attack did not demand such conclusion.

The undisputed facts of this case do not allow us to conclude that Finley was acting defensively or that such an inference was proper. It is a matter of record that Finley testified that he was not apprehensive. In addition, Finley not only escalated the encounter, but when Lemming attempted to run away, Finley pursued him. Such acts cannot be considered defensive. Had Finley been acting defensively, he would not have chased after Lemming when Lemming tried to escape the confrontation.

The cases cited by the special concurrence strongly support the analysis of this dissent and support the conclusion that, because Finley escalated and prolonged his confrontation with Lemming, Finley was acting aggressively rather than taking "measured steps" to protect himself. For example, in *Strange v. State*,[43] the victims of the defendant's aggravated assault with a handgun took cover on the floorboard of a car and sped away from the defendant. In *Lunsford v. State*,[44] the victims once again fled from an assailant with a handgun, and they entered a car and crouched down to the floorboard. In *Gordian v. State*,[45] after an assault with a handgun, police found the victim at the scene "very upset, crying, fearful, shaking, quivering, and with red eyes." In *Carter v. State*,[46] the victim, who admitted that he was afraid, retreated from an assailant with a knife into his apartment and locked the door behind him. In *Hicks v. State*,[47] after being warned in advance that the defendant intended to harm her due to a prior disagreement, the victim was assaulted by several men armed with a .357 Magnum revolver and a rifle. And, finally, in *Payne*

---

[43] *Strange v. State*, 244 Ga. App. 635 (535 SE2d 315) (2000).
[44] *Lunsford v. State*, 260 Ga. App. 818 (581 SE2d 638) (2003).
[45] *Gordian v. State*, 261 Ga. App. 75 (581 SE2d 616) (2003).
[46] *Carter v. State*, 248 Ga. App. 139 (546 SE2d 5) (2001).
[47] *Hicks v. State*, 211 Ga. App. 370 (439 SE2d 56) (1993).

*v. State*,[48] the special concurrence fails to set forth the entire holding in that case, which was:

> Payne's quickly cutting his vehicle in front of the State trooper's patrol car just as the trooper was about to pass him during a relatively high speed chase was sufficient evidence of use of an automobile as a potentially deadly weapon. Further, the State trooper's *defensive driving* necessitated by Payne's maneuvers, and the trooper's decision to ram Payne's vehicle in an attempt to disable it and prevent injury to anyone, was evidence of a reasonable apprehension of violent injury, which may be inferred from the conduct of the victim.

(Emphasis supplied.) Thus, even in *Payne*, the victim's attempts to avoid the defendant's attacks was integral to a finding of reasonable apprehension. In this case, to the contrary, Finley made no attempts to avoid the confrontation with Lemming *at all*.

In each of these cases, the victims of the aggravated assaults responded with *overt fear* or by *fearfully running away* from their assailants, and, in doing so, they took measured steps to protect themselves. In this case, Finley did exactly the *opposite*; he confronted his assailant forcefully, and he even prolonged the confrontation after the assailant fled his attack. Because of this fundamental difference, the direct evidence of fearful reactions by the victims and the different issues involved, the cases cited in the special concurrence are distinguishable from the present case, and the "measured steps doctrine" cannot be expanded to encompass cases such as this one.

The special concurrence also relies on *Jackson*, supra. *Jackson* involves an inference of apprehension by one victim, based on the conduct of another. In *Jackson*, one of the victims testified that he was afraid, while the other victims did not. Their fear was inferred by the court from the testimony of the single victim.

In *Jackson*, supra at 579 (1), we held:

> The evidence showed that Jackson pointed his gun at Sparks, Bryant, and Fairley. Although *only Sparks testified* that he was fearful he would be shot, the factfinder properly found evidence as to Bryant's and Fairley's state of mind. Sparks' testimony that he was fearful, coupled with testimony that Jackson pointed the gun at each of the victims, was sufficient for a factfinder to find that all three victims had a

---

[48] *Payne v. State*, 195 Ga. App. 523, 525 (4) (394 SE2d 781) (1990).

reasonable apprehension of immediately receiving a violent injury. Further, the presence of a deadly weapon would normally place a victim in reasonable apprehension of being injured violently.

(Punctuation and footnote omitted; emphasis supplied.)

In *Jackson*, there was a gun involved, and there was no direct testimony from one victim as to his mental state. Unlike *Jackson*, all of the victims in this case testified regarding his or her mental state. Sutton testified that she was apprehensive, and Finley testified that he was not. In addition, Finley's aggressive actions toward Lemming supported his testimony. This creates a situation much different than *Jackson*. In *Jackson*, the jury was justified in finding that all victims were reasonably apprehensive because there was no undisputed evidence presented that the victims who did not testify were not afraid. Here, on the other hand, Finley testified that he was not apprehensive and acted aggressively. Confronted with this evidence, "the [jury] was presented with no evidence by which to establish [a different] version of events." *Gillette*, supra.

The special concurrence is correct that, in dicta, *Jackson*, supra, states that "the presence of a deadly weapon would *normally* place a victim in reasonable apprehension of being injured violently." (Punctuation omitted; emphasis supplied.) *Jackson* involved the use of a handgun, while this case involved only a filed-down key chain knife, not a deadly weapon. With Finley's direct testimony that he was not apprehensive and his attack on Lemming, we are not dealing with a normal situation as envisioned in the above dicta quote. For all of these reasons, *Jackson* is distinguishable from the case now before us.

We must point out that this opinion in no way should be interpreted to depend solely on Finley's lack of *fear*. Our Supreme Court has found that "the law of Georgia does not appear to require fear as an element of apprehension." (Punctuation omitted.) *Bates v. State.*[49] Nothing in this dissent should be construed to state otherwise. That does not change the fact, however, that, in this case, the record indicates that the victim had *no apprehension* or *perception* of an immediate violent injury, under any dictionary definition one chooses.

Here, we are bound by both our legislature and controlling case law to reverse the finding of the jury on this issue. While apprehension of injury is not a necessary element of other criminal charges which the facts here might have supported, it is required to support

---

[49] *Bates v. State*, 275 Ga. 862, 865 (4) (572 SE2d 550) (2002).

the aggravated assault charge. While the jury is generally free to not accept witness testimony, it is not free to convict in the absence of supporting evidence.

Likewise, the State's reliance on cases such as *Happoldt v. State*[50] and *Gray v. State*[51] does not alter the outcome in this matter. Based on these cases, the State maintains "that as to the charge involving Mr. Finley, the doctrine of transferred intent would apply, regardless of whom Appellant was gesturing toward with the knife." These cases have no application here as they involve, and answer in the negative, the question of whether the State must prove intent to injure in order to establish the crime of aggravated assault. The issue here is not that of Lemming's intent to injure, but of Finley's state of mind and whether Lemming's actions caused him to be in reasonable apprehension of receiving a violent injury.

Accordingly, the evidence was sufficient to support Lemming's conviction for criminal attempt to commit armed robbery and the aggravated assault of Sutton. However, the evidence was not sufficient to support Lemming's conviction for the aggravated assault of Finley. I would reverse the judgment on this issue.

I am authorized to state that Chief Judge Ruffin and Judge Barnes join in this dissent.

DECIDED MARCH 11, 2005.

*Randall S. Estes*, for appellant.
*Daniel J. Porter, District Attorney, David K. Keeton, Assistant District Attorney*, for appellee.

---

[50] *Happoldt v. State*, 267 Ga. 126 (475 SE2d 627) (1996).
[51] *Gray v. State*, 257 Ga. App. 393 (571 SE2d 435) (2002).