## S02A0969. BATES v. THE STATE.
(572 SE2d 550)

</div>

HINES, Justice.

Clifton Boyd Bates ("Bates") appeals his convictions for felony murder and possession of a firearm during the commission of a felony.[1] For the reasons that follow, we affirm in part, and remand.

---

[1] Julius Matthew Bates was killed on November 14, 1998. On January 28, 1999, a Hall County grand jury indicted Clifton Boyd Bates for malice murder, aggravated assault, felony murder in the commission of aggravated assault, possession of a firearm during the commission of a felony, and possession of a firearm with an altered identification mark. Bates was tried before a jury on February 8-11, 2000, and found guilty of aggravated assault, felony murder, and possession of a firearm during the commission of a felony; he was found not guilty of malice murder. The jury was not instructed on possession of a firearm with an altered identification mark. On February 11, 2000, Bates was sentenced to life

Construed to support the verdicts, the evidence showed that Bates's brother Matt suggested to Bates, then 19 years old, that he get a job to help pay bills. Bates was not working; he and Matt had agreed that Bates would attend school while Matt worked, and then Bates would work while Matt completed school. However, Bates was not attending school regularly. An argument ensued involving Bates, Matt, their sister, and their mother, Mary. During the argument, it was suggested that Matt was withholding funds from his pay. At one point, Bates said: "Maybe we should just shoot Matt." After the argument, Matt followed his mother, Mary, outside. They walked a short way down the road and turned back home. Bates drove by them in his car, but Mary signaled him to turn around and go home. When Matt and Mary got home, Matt went back to his room, sat on his bed, and smoked a cigarette. Shortly thereafter, Bates came into Matt's room with a .45 caliber pistol in his hand. Matt and Bates continued to argue and Bates told Matt to leave him alone about getting a job.

At trial, Mary testified that she was behind Bates, and did not remember seeing the shooting, or much of what occurred immediately before or after it. However, at Matt's funeral, Mary told a family friend that Bates placed the pistol at Matt's head and told him that if Matt did not give Bates the money Bates would "blow his brains out." Matt said to Bates words such as: "You might as well go ahead and shoot me. You've been threatening me for years to do it." Bates then pulled the trigger. Mary also spoke to her sister several hours after the shooting. Mary told her sister that when Bates went to Matt's door, Mary told him to put the pistol away, but he did not. Matt then said to Bates: "I haven't done anything wrong to you, Boyd. I just want you to help me. Since you were about 12 years old, something happened to you. You've gotten worse and worse. You've tormented me for years. If you're going to do it, do it." Bates then raised the pistol and fired. Mary told investigating police officers that she wanted to get between her sons, but that the gun "went up and shot" too quickly. She opined that it happened so quickly that even Bates did not know that "he did it 'til he did it."

Matt died from a single bullet wound to his head, fired from approximately a foot away. There was physical evidence from which

in prison for felony murder and five years in prison for possession of a firearm during the commission of a crime, to be served consecutively; the court declared that the aggravated assault merged with the felony murder for sentencing purposes. See *Malcolm v. State*, 263 Ga. 369, 371-374 (4), (5) (434 SE2d 479) (1993). On that same date, an order of nolle prosequi was entered on the charge of possession of a firearm with an altered identification mark. Bates moved for a new trial on March 3, 2000, amended the motion on November 21, 2000, and amended it again on March 2, 2001. The motion was denied on August 6, 2001. Bates filed a notice of appeal on September 4, 2001, his appeal was docketed in this Court on March 18, 2002, and submitted for decision on May 13, 2002.

the jury could infer that he was turning his head and closing his eyes when shot. On several previous occasions, Bates had pointed weapons at Matt and threatened him. Bates was in the habit of carrying a firearm that was loaded and ready to fire, with the safety off, even inside the home. Approximately two dozen firearms were found in the home, most under Bates's control, although many were the property of Mary, having been owned by Bates's late father.

Bates told investigating police officers that the pistol went off when he was trying to place it on a dresser, and demonstrated how that occurred. When the officers informed him that such an action was inconsistent with the physical evidence, Bates then said that "maybe" he was trying to hit Matt with the pistol when it went off, and demonstrated such an action to the officers. When again informed that the physical evidence did not match that account, Bates stated that he brought the pistol up from his side to point at Matt's head, intending to tell Matt to leave him alone, but that he did not pull the trigger. Bates posited that the weight of the pistol went against his trigger finger as he brought the pistol up, causing it to fire. The pistol weighed two pounds and two ounces, and required four and three-fourths pounds of pressure to pull the trigger and activate the hammer; the pistol required pressure on both the trigger and the back strap to fire. In repeated attempts, two experts were unable to make the pistol fire in the manner last described by Bates.

Bates testified to the same effect as the last version he told investigating officers. According to Bates's testimony, Matt's last words were: "I'm tired of you threatening me, Boyd. You've been bullying me since I was 12 years old. If you're going to shoot me, just go ahead and shoot me. You'd be doing me a favor."

1. The evidence was sufficient to enable a rational trier of fact to find Bates guilty beyond a reasonable doubt of the crimes for which he was convicted. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

2. Bates contends that the trial court should have granted his request to charge the jury on the crime of reckless conduct. However, Bates testified that he intended to point the loaded pistol at Matt and tell Matt to leave him alone. Thus, he did not act with the requisite mental state to support a charge on reckless conduct. *Savage v. State*, 274 Ga. 692, 695 (3) (558 SE2d 701) (2002); *Stobbart v. State*, 272 Ga. 608, 611 (3) (533 SE2d 379) (2000). See also *Rhodes v. State*, 257 Ga. 368, 370 (6) (359 SE2d 670) (1987).

3. The indictment charged Bates with aggravated assault, and with felony murder in the commission of aggravated assault, "by shooting" Matt. The court charged the jury that a simple assault is an act that places another person "in reasonable apprehension of immediately receiving a violent injury," and that an aggravated

assault occurs when one "assaults another person with a deadly weapon." Bates contends that the jury was thus instructed that he could be found guilty of committing aggravated assault in a manner not charged in the indictment, as simple assault can be committed either by placing the victim in reasonable apprehension of receiving a violent injury, or by committing, or attempting to commit, a violent injury to the victim. But a court's instruction on aggravated assault necessarily includes the law on simple assault, and the statement in the indictment that Bates committed the aggravated assault "by shooting" Matt, together with the evidence presented, raised the possibility of assault in the manner in which the court instructed the jury. *Ross v. State*, 268 Ga. 122, 125 (6) (485 SE2d 780) (1997), overruled on other grounds, *Bishop v. State*, 271 Ga. 291 (2) (519 SE2d 206) (1999).

4. Bates contends that the trial court erred in responding to two jury questions. First, when asked to clarify "reasonable apprehension," the court answered in part, that "the law of Georgia does not appear to require fear as an element of apprehension." Although Bates argues that, in the context of the statutory definition of assault, the victim must be in a state of fear, that is not correct. "[R]easonable apprehension of injury is not the same as simple fear," and the fact that the victim does not necessarily experience fear does not preclude a finding of reasonable apprehension. *Carter v. State*, 248 Ga. App. 139 (1) (546 SE2d 5) (2001). Accord *Hicks v. State*, 211 Ga. App. 370, 373 (1) (439 SE2d 56) (1993).

Second, during the instructions to the jury on involuntary manslaughter, the court charged that the jury could find Bates guilty of involuntary manslaughter during the commission of "the misdemeanor offense of pointing a gun at another. . . . The offense of pointing a firearm at another applies only where the victim is not placed in reasonable apprehension of immediate violent injury by the pointing of the firearm; for example, when the victim is unaware a weapon has been pointed at him. Otherwise, the act of pointing a firearm at a person comes within the definition of aggravated assault." After some deliberation, the jury asked the court if "being unaware of the weapon [is] the only way that use of a firearm is not aggravated assault?" The court responded that such is "the only example given in law, but it is just an example. That's as much help as I can give you with that." Bates now contends that this answer amounted to an expression of opinion on the evidence. See OCGA § 17-8-57.

It is questionable whether Bates has preserved any objection to this response by the court. At the close of the court's first instructions to the jury, Bates reserved all objections. However, when the jury's questions to the court were presented, Bates raised concerns only

with the court's proposed treatment of the question concerning reasonable apprehension. After the court gave its responses to the jury and asked for objections, Bates responded only, "what we've already stated . . . ," and reiterated his arguments concerning the definition of "reasonable apprehension." In any event, there is no merit to Bates's argument that the court improperly commented upon the evidence. The court's response was limited to the law on use of a firearm, and the example that had been disclosed in the court's research; it contained no comment upon the evidence that had been placed before the jury.

5. Finally, Bates contends that he received ineffective assistance of counsel at trial. See *Strickland v. Washington*, 466 U. S. 668 (104 SC 2052, 80 LE2d 674) (1984); *Smith v. Francis*, 253 Ga. 782, 783 (325 SE2d 362) (1985). Trial counsel himself raised the issue of ineffective assistance of counsel in the motion for new trial. Subsequently, the trial court appointed separate counsel to represent Bates on that issue. However, that attorney did not file any pleadings or briefs. The trial court addressed the arguments raised by trial counsel, and denied the motion for new trial; it does not appear that any evidentiary hearing was conducted on the claim of ineffective assistance. Although separate counsel had been appointed, as the only issues addressed by the trial court were raised by trial counsel, we do not deem the issue of ineffective assistance to have been properly before the trial court as counsel cannot be expected to properly assert and argue his or her own ineffectiveness. See *Kennebrew v. State*, 267 Ga. 400, 402 (2) (480 SE2d 1) (1996); *White v. Kelso*, 261 Ga. 32 (401 SE2d 733) (1991). As appellate counsel was appointed after the motion for new trial was denied, and after trial counsel filed the notice of appeal, the case is remanded to the trial court for appropriate consideration of the issue of ineffective assistance of trial counsel. See *Peterson v. State*, 274 Ga. 165, 171-172 (6) (549 SE2d 387) (2001).

*Judgment affirmed in part and case remanded. All the Justices concur.*

DECIDED NOVEMBER 12, 2002 —
RECONSIDERATION DENIED DECEMBER 13, 2002.

*Valpey & Parks, Gregory W. Valpey, Carey, Jarrard & Walker, Lucy K. Henry*, for appellant.

*Lydia J. Sartain, District Attorney, Jennifer C. Bagwell, Assistant District Attorney, Thurbert E. Baker, Attorney General, Jennifer S. Gill, Assistant Attorney General*, for appellee.