## A07A0472. MOORE v. THE STATE.
(649 SE2d 337)

ELLINGTON, Judge.

A Butts County jury found Richard Moore guilty beyond a reasonable doubt of involuntary manslaughter, OCGA § 16-5-3 (a); aggravated assault, OCGA § 16-5-21 (a) (2); possession of a firearm during the commission of a felony, OCGA § 16-11-106 (b) (1); and carrying a pistol without a license, OCGA § 16-11-128.[1] He appeals from the denial of his motion for new trial, contending there was insufficient evidence to support the aggravated assault conviction and that the trial court should have vacated his possession of a firearm conviction. Moore also argues that the trial court improperly commented on the evidence, admitted similar transaction evidence, and charged the jury. As explained below, we find that Moore's firearm conviction under OCGA § 16-11-106 must be reversed. Moore's remaining enumerations of error present no basis for reversing his convictions, however, so his other convictions are affirmed.

Viewed in favor of the jury's verdict,[2] the evidence showed the following relevant facts. At about 1:30 a.m. on the morning of May 29, 2005, eighteen-year-old Moore went to a party, accompanied by two other teenagers, the victim and a mutual friend, Melissa Black. Moore pulled his car into the driveway, got out of his car, and stood on the driver's side; the victim and Black stood near the door on the passenger's side. Several people from the party walked over to Moore's car and stood on the passenger's side, talking to the victim and Black. A few minutes later, Moore called the victim a "smart ass." In response, the victim flicked a lit cigarette toward Moore. The cigarette went through the car's sun roof and landed on the leather seat on the driver's side. Moore frantically grabbed the cigarette, then he pulled a .357 revolver out of his car, told the victim, "I'd shoot you over my car, don't do nothing like that," cocked the gun, and pointed it directly at the victim. After a moment, Moore uncocked the gun and put it back in the car under the driver's seat. Someone asked Moore if the gun was loaded, and Moore said yes. None of the eyewitnesses saw Moore unload the gun after that point.

The victim then said something like, "I thought you didn't pull out a gun unless you were planning on using it" or "I thought you never cocked it without firing it." Without responding, Moore grabbed the gun, cocked it, stretched his arm over the top of the car so that the gun was only about two feet from the victim, and pointed the gun at

---

[1] Moore was acquitted of murder and felony murder, but convicted of felony involuntary manslaughter as a lesser included offense of felony murder.

[2] *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979).

the victim. The weapon immediately discharged, and a bullet struck the victim in the chest. An eyewitness testified that he saw Moore pull the trigger and shoot the victim.

Bystanders called 911, and a responding police officer saw Moore sitting on the ground near his car, holding the victim's head. Moore and the victim were covered in blood. The officer asked who shot the victim, and Moore immediately responded that he did. Moore also told the officer that the gun was underneath the front seat of his car. A police officer handcuffed Moore and put him in the back of a patrol car. Emergency personnel who arrived shortly thereafter determined that the victim was dead.

Later, when officers removed Moore from the patrol car, they found five bullets for a .357 magnum revolver clustered in the seat where Moore had been sitting. The bullets had blood on them. An officer testified that the handgun that he retrieved from Moore's car had five empty chambers and one spent round in a chamber. There was also blood on the gun's handle, hammer, and cylinder. According to the officer, the position of the cylinder and the empty round in the chamber indicated that either the gun had been fired more than once or the cylinder had been opened after the gun had been fired.

Moore was arrested and taken to the Butts County jail. During a custodial interview, Moore admitted that he told the victim, "I'll shoot you," and pulled out the gun after the victim flicked the cigarette into his car, but he claimed that he and the victim were just joking around. He denied that he pointed the gun at the victim during the first incident, but admitted that he pointed the gun at the victim during the second incident, just before it discharged.

At trial, however, Moore admitted that he pointed the gun at the victim during the first incident. He also admitted that the reason he got the gun out of his car was because the victim had flicked a lit cigarette into his car. In addition, Moore testified that he knew the gun was loaded at that time because he had personally loaded the gun with copper-jacketed hollow point bullets sometime in the weeks prior to the shooting. According to Moore, after the first incident, he put the gun back in his car, but a bystander asked to look at the gun, so he (Moore) picked up the gun to show it to the bystander. Moore testified that he unloaded and cocked the gun before holding it out to show the bystander. Moore admitted that he grasped the handle of the gun and held it like a weapon, as opposed to setting it down or holding it out on the palm of his hand. Moore testified that, as he stretched out his arm across the roof of the car to display the gun, he must have accidentally pulled the trigger because the gun went off, killing the victim.

The bystander referred to by Moore testified at trial, however, and denied that he ever asked Moore to show him the gun and also

denied that Moore had ever held out the gun so he could see it. Other eyewitnesses also testified that no one asked to see the gun before Moore pulled it out the second time.

In addition to this evidence, the State introduced evidence of a similar transaction that occurred two days before Moore shot the victim. Two teenaged girls testified that they were parked at a McDonald's restaurant when Moore parked alongside them and called them over to his car. One of the girls was wearing a t-shirt that said, "I Have Issues." Moore told her, "I hate people that have issues," and he pointed a handgun at the girl's chest. According to the witnesses, Moore had a serious look on his face, but then he smirked and laughed about it and claimed that the gun was just a water gun. Both witnesses testified, however, that the gun did not look like a water gun. Further, the girl testified that she was frightened by the incident.

1. Moore contends that the evidence was insufficient for the jury to have found him guilty of aggravated assault as alleged in Count 3 of the indictment. When a criminal defendant challenges the sufficiency of the evidence supporting his or her conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Citation omitted; emphasis in original.) *Jackson v. Virginia*, 443 U. S. 307, 319 (III) (B) (99 SC 2781, 61 LE2d 560) (1979). The jury, not this Court, resolves conflicts in the testimony, weighs the evidence, and draws reasonable inferences from the evidence. Id. "As long as there is some competent evidence, even though contradicted, to support each fact necessary to make out the State's case, the jury's verdict will be upheld." (Citation and punctuation omitted.) *Miller v. State*, 273 Ga. 831, 832 (546 SE2d 524) (2001).

Under OCGA § 16-5-20 (a) (2), an assault occurs when a person commits an act "which places another in reasonable apprehension of immediately receiving a violent injury." Under OCGA § 16-5-21 (a) (2), a person commits aggravated assault when he or she assaults someone with a deadly weapon. In this case, Count 3 of the indictment charged that Moore committed aggravated assault by pointing a revolver, a deadly weapon, at the victim. The charge was based upon the first time Moore pointed the gun at the victim.

According to Moore, the evidence showed that, during the first incident, he and the victim were merely "joking around." Therefore, Moore argues that there was no evidence to prove that the victim was in reasonable apprehension of immediately receiving a violent injury. We disagree.

The Supreme Court of Georgia has held that "[r]easonable apprehension of injury is not the same as simple fear, and the fact that

the victim does not necessarily experience fear does not preclude a finding of reasonable apprehension." (Citations and punctuation omitted.) *Bates v. State*, 275 Ga. 862, 865 (4) (572 SE2d 550) (2002).

> The Supreme Court, as well as [this] Court, seems to have interpreted the statute to require not that the victim have a reasonable *fear* of immediately receiving a violent injury but rather that the victim have a reasonable *perception* that he is about to receive a violent injury.

(Emphasis in original.) *Lemming v. State*, 272 Ga. App. 122, 124-125 (1) (612 SE2d 495) (2005). In addition, this Court has repeatedly found that the presence of a deadly weapon "would normally place a victim in reasonable apprehension of being injured violently." (Punctuation and footnote omitted.) *Jackson v. State*, 251 Ga. App. 578, 579 (1) (554 SE2d 768) (2001) (evidence was sufficient to show the victims experienced a reasonable apprehension of receiving a violent injury when the defendant pointed a gun at them, even though only one of the three victims testified that he was afraid).[3] Moreover, a jury could find that a victim experienced a reasonable apprehension of receiving a violent injury when confronted by a loaded gun, even when the victim affirmatively testified that he was not afraid[4] or the evidence showed that the victim exhibited bravado, not fear, when confronted.[5]

In this case, Moore admitted that, moments after the victim flicked a lit cigarette onto the leather seat of his (Moore's) car, Moore told the victim that he was going to shoot him and pointed a loaded .357 revolver at the victim, who was standing just a few feet away. Although Moore claimed that he and the victim were just joking around, we find that the evidence presented was sufficient to support a finding that Moore's act placed the victim in reasonable apprehension of immediately receiving a violent injury. *Bates v. State*, 275 Ga. at 864 (1); *Jackson v. State*, 251 Ga. App. at 579 (1).

---

[3] See also *Anthony v. State*, 276 Ga. App. 107, 108 (1) (622 SE2d 450) (2005) (pistol); *Lemming v. State*, 272 Ga. App. 122, 125 (1) (612 SE2d 495) (2005) (a filed down "pocket paring knife"); *State v. Bolman*, 222 Ga. App. 534, 535 (474 SE2d 721) (1996) (knife).

[4] See, e.g., *Lunsford v. State*, 260 Ga. App. 818, 821 (2) (581 SE2d 638) (2003) (evidence was sufficient to support a finding that the victim had a reasonable apprehension of immediately receiving a violent injury even though victim testified that "I was never at any point afraid of [the defendant]. He wasn't a good shot. When he shot the phone I knew he wasn't shooting me. . . . I just knew he wouldn't hurt me.") (punctuation omitted).

[5] See, e.g., *Bates v. State*, 275 Ga. at 864 (1) (evidence was sufficient to support a finding that the victim had a reasonable apprehension of immediately receiving a violent injury when his brother, the defendant, pointed a loaded handgun to the victim's head, even though, just before the defendant pulled the trigger, the victim allegedly told him, "I'm tired of you threatening me, Boyd. You've been bullying me since I was 12 years old. If you're going to shoot me, just go ahead and shoot me. You'd be doing me a favor.") (punctuation omitted).

2. Moore contends the trial court erred by making an improper comment on the evidence which had the practical effect of changing the burden of proof. Under OCGA § 17-8-57, "[i]t is error for any judge in any criminal case, during its progress or in his charge to the jury, to express or intimate his opinion as to what has or has not been proved or as to the guilt of the accused." The statute, however, "is only violated when the court's charge assumes certain things as facts and intimates to the jury what the judge believes the evidence to be." (Citations and punctuation omitted.) *Blackmon v. State*, 197 Ga. App. 133, 136 (3) (397 SE2d 728) (1990).

The record shows that, shortly after the jury was impaneled, the court made the following statement as part of its pre-evidentiary jury instructions:

> My best analogy is that a trial is like a jigsaw puzzle. You are going to pour out a bunch of pieces during the trial of the case and those pieces will come to you from oral testimony, photographs, documents, and other things. Now I am going to give you a hint. There's a 1000 piece puzzle and all the pieces are not there. Nobody can recreate each and every aspect of something that happened in the past. In fact, . . . if every aspect were clearly developed, we probably wouldn't be here trying the case.

The court followed this statement with comprehensive instructions on the State's burden of proving every element of the charges beyond a reasonable doubt and the jury's role in judging the credibility of witnesses and resolving conflicts in the evidence.[6]

On appeal, Moore has failed to cite to any authority to support a finding that the statement, when read in context, constituted an improper comment on the evidence or impermissibly shifted the burden of proof. The court did not indicate that certain things should be considered as facts and, since neither the opening statements nor evidence had been presented at that point, the court clearly did not intimate to the jury what he thought the evidence showed. *Blackmon v. State*, 197 Ga. App. at 136 (3). Further, the statement was immediately followed by a comprehensive charge on the State's burden of proof. Accordingly, Moore has failed to demonstrate that the statement constituted reversible error. Id.

---

[6] The record also shows that, prior to trial, the State proposed that the court give the pre-evidentiary statement and jury instructions, and defense counsel specifically told the court that she had reviewed the statement and instructions and did not object to them. Further, counsel did not object to the statement at trial.

3. Moore argues that the trial court erred in admitting the similar transaction evidence and in giving an improper limiting instruction to the jury.

(a) As shown above, the similar transaction evidence showed that, just two days before the incident in this case, Moore pointed a gun at the chest of a teenaged girl simply because she was wearing a t-shirt that said, "I Have Issues." Under the circumstances, we find that the trial court did not abuse its discretion in admitting this evidence as a similar transaction. See *Ledford v. State*, 275 Ga. App. 107, 109 (620 SE2d 187) (2005) ("It is permissible for the State to introduce a similar crime precisely to show that the accused has a propensity for initiating and continuing unprovoked violent encounters. This falls into the category of showing malice, intent, motive, course of conduct, and bent of mind.") (citation and punctuation omitted).

(b) Although Moore complains on appeal that the court gave an improper limiting instruction, the record shows that Moore failed to object to the instruction at trial. Therefore, any error was waived. *Jones v. State*, 272 Ga. 884, 887 (4) (536 SE2d 511) (2000).

4. Moore argues that the trial court improperly charged the jury on circumstantial evidence and involuntary manslaughter.

(a) Moore complains that the court did not give the full pattern jury charge on circumstantial evidence and failed to instruct the jury on OCGA § 24-4-6, the standard of proof in a case based entirely on circumstantial evidence. There is nothing in the record, however, that shows Moore submitted a written request for this charge. Also, during the charge conference, defense counsel stated that the court's proposed charges were sufficient. Further, as shown above, the evidence presented at trial consisted of both direct and circumstantial evidence. Therefore, there was no error. *Kennedy v. State*, 274 Ga. 396, 397 (4) (554 SE2d 178) (2001); *Barner v. State*, 263 Ga. 365, 366-367 (3) (434 SE2d 484) (1993).

(b) Moore argues that the court's jury instruction on felony involuntary manslaughter was incorrect and incomplete. He claims that neither the State nor defense counsel requested the charge, the court's charge took away the jury's discretion, and the court failed to charge the jury on the statutory definition of pointing a pistol at another. There is no merit to these arguments.

Under OCGA § 16-5-3 (a), a person commits felony involuntary manslaughter when he causes the death of another without an intention to do so by committing an unlawful act other than a felony. One misdemeanor unlawful act that could serve as the predicate act for a felony involuntary manslaughter conviction is intentionally

pointing a pistol at another.[7] Under OCGA § 16-11-102, a "person is guilty of a misdemeanor when he intentionally and without legal justification points or aims a gun or pistol at another, whether the gun or pistol is loaded or unloaded."

In this case, there was evidence that Moore intentionally pointed a gun at the victim just before it fired. Moore testified, though, that he did not intentionally pull the trigger, claiming that the gun accidentally fired. Based upon Moore's testimony, the State requested a jury charge on felony involuntary manslaughter as a lesser included offense to the felony murder charge. The court charged the jury that it could consider involuntary manslaughter as a lesser included offense and specifically instructed the jury as follows:

> A person commits involuntary manslaughter when that person causes the death of another human being without any intention to do so by the commission of pointing a pistol at another. In that connection, I charge you the offense of pointing a pistol at another is a misdemeanor as per OCGA § 16-11-102. . . . [Under] Code Section 16-11-102, a person is guilty of a misdemeanor when he intentionally and without legal justification points or aims a gun or pistol at another, whether the gun or pistol is loaded or unloaded.

Having reviewed the record and the applicable statutes, we find no error in the court's instruction.

(c) Moore also contends that, since the trial court charged the jury on felony involuntary manslaughter as a lesser included offense, the court should have also charged the jury on misdemeanor involuntary manslaughter. Under OCGA § 16-5-3 (b), a person commits misdemeanor involuntary manslaughter when he causes the death of another "without any intention to do so, by the commission of a lawful act in an unlawful manner likely to cause death or great bodily harm." Based upon Moore's testimony that the gun accidentally went off when he was showing the gun to the bystander, he argues that, if the court had given the jury a charge on misdemeanor involuntary manslaughter, the jury could have found that he caused the victim's death by committing a "lawful act in an unlawful manner likely to cause death or great bodily harm."

Moore's possession of the gun at the time of the shooting, however, was not lawful. Moore admitted at trial that he did not have

---

[7] See *Smith v. State*, 234 Ga. App. 314, 315 (1) (506 SE2d 659) (1998) (defendant was guilty of felony involuntary manslaughter based on evidence that he was unlawfully in possession of a handgun which he cocked and recklessly pointed at the victim, causing the victim's death).

a license for the gun, which was a violation of OCGA § 16-11-128. In fact, at 18 years old, Moore did not qualify for a license to carry a .357 revolver. See OCGA § 16-11-129 (b) (1.1) (prohibiting anyone under 21 years of age from obtaining a license to carry a pistol or revolver). Therefore, because there was no evidence that Moore was in lawful possession of the gun at the time of the shooting, there was nothing to support a jury charge on misdemeanor involuntary manslaughter under OCGA § 16-5-3 (b). See *Somchith v. State*, 272 Ga. 261, 263 (3) (527 SE2d 546) (2000) (requested jury charges must be supported by evidence).

Moreover, the record shows that the trial court, the State, and defense counsel had a charge conference in addition to a lengthy discussion about whether the court should give a felony involuntary manslaughter charge. Counsel never mentioned a charge on misdemeanor involuntary manslaughter, nor did she request such a charge in writing. Therefore, the court did not err in failing to give the charge. *Kirkland v. State*, 282 Ga. App. 331, 333-334 (2) (638 SE2d 784) (2006); *Jones v. State*, 272 Ga. at 886-887 (3).

5. Moore claims that the trial court erred by failing to vacate the possession of a firearm during the commission of a felony conviction or, in the alternative, incorrectly applied the law when sentencing him on the conviction. For the following reasons, we reverse Moore's conviction on this charge.

Count 4 of the indictment charged Moore with possession of a firearm during the commission of a felony and specifically identified murder as the underlying felony.[8] As noted in footnote 1, supra, Moore was acquitted of both murder and felony murder, but was convicted of the lesser included offense of involuntary manslaughter. When the court was charging the jury on involuntary manslaughter as a lesser included offense, however, it never instructed the jury that involuntary manslaughter was a felony. See Division 4 (b), supra.

In *Prather v. State*, 259 Ga. App. 441, 442-443 (1) (576 SE2d 904) (2003), this Court was presented with a very similar situation: the defendant was indicted for murder and possession of a firearm during

---

[8] Because Count 4 of the indictment specifically identified murder as the underlying felony offense for the possession of a firearm charge, the jury was not authorized to convict Moore of possession of a firearm during the commission of the aggravated assault (Count 3 of the indictment). See *Crowder v. State*, 241 Ga. App. 818, 820-821 (3) (b) (527 SE2d 901) (2000) (reversing a conviction for possession of a firearm during the commission of a felony when the indictment charged that the possession charge was predicated on murder, but the trial court instructed the jury that the predicate offense could be either murder or armed robbery); cf. *Mason v. State*, 279 Ga. 636, 639 (4) (619 SE2d 621) (2005) (affirming a conviction for possession of a firearm during the commission of a felony when the indictment charged that the possession charge could be predicated on either aggravated assault, kidnapping, or armed robbery, and the Court upheld the defendant's convictions for kidnapping and armed robbery).

the commission of a murder. The trial court instructed the jury that voluntary manslaughter was a lesser included offense of murder, but did not instruct the jury that voluntary manslaughter was a felony. Id. at 443 (1). The jury found Prather guilty of the lesser included offense of voluntary manslaughter, as well as the possession charge. Id. On appeal, this Court suggested, without deciding, that a lesser included offense could constitute the predicate act for a possession charge if there was adequate proof of the included offense and the jury was properly charged that the included offense was a felony.[9] Id. Because there was no jury instruction identifying voluntary manslaughter as a felony, however, the Court ruled that the possession charge could not be based on that offense. Id. Therefore, it reversed Prather's possession conviction. Id.

In this case, the lesser included offense at issue was involuntary manslaughter. As noted in Division 4 (b) and (c), supra, involuntary manslaughter may be either a felony or a misdemeanor, and the trial court never instructed the jury that the involuntary manslaughter offense in this case was a felony. Therefore, the facts of this case present an even more compelling reason for reversing Moore's possession conviction than the facts presented in *Prather*. Consequently, Moore's conviction for possession of a firearm during the commission of a felony must be reversed.

*Judgment affirmed in part and reversed in part. Andrews, P. J., and Adams, J., concur.*

DECIDED JULY 5, 2007.

*Althea L. Buafo*, for appellant.
*Richard G. Milam, District Attorney, Rita B. Lewis, Assistant District Attorney*, for appellee.

---

[9] See also *Dillard v. State*, 251 Ga. 858, 859 (2) (310 SE2d 518) (1984) (holding that, when an indictment has charged a defendant with felony murder based upon a specific felony, but the jury convicts the defendant of a lesser included offense of the specified felony, the felony murder conviction will stand as long as there was adequate proof of the lesser included offense and correct jury instructions, which must identify the included offense as a felony and include the essential elements of both the lesser included offense and felony murder).