**FOURTH DIVISION**
**DOYLE, P. J.,**
**MILLER and DILLARD, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 12, 2014**

# In the Court of Appeals of Georgia

A14A1194. IN THE INTEREST OF T. J. J, a child.        DO-044

DOYLE, Presiding Judge.

T. J. J. was adjudicated delinquent for committing two acts of felony theft by receiving stolen property[1] and two acts of misdemeanor theft by receiving stolen property.[2] He appeals, arguing that the evidence was insufficient to support his delinquency adjudication. We disagree and affirm the judgment.

> To prove that a juvenile is delinquent for committing acts of a criminal nature, the State must prove the commission of these acts beyond a reasonable doubt, just as it would in a criminal prosecution of an adult for the same acts. So, when a juvenile challenges the sufficiency

---

[1] OCGA §§ 16-8-7 (a) & 16-8-12 (a) (1) (c).

[2] OCGA §§ 16-8-7 (a) & 16-8-12 (a) (1).

of the evidence, we apply the standard set forth in *Jackson v. Virginia*,[3] and we consider whether the evidence adduced at the hearing would permit a rational trier of fact to conclude beyond a reasonable doubt that the juvenile committed the acts with which he is charged. In considering the sufficiency of the evidence, we view the evidence in the light most favorable to the adjudication below, keeping in mind that it is for the trier of fact, not this Court, to weigh this evidence, resolve any conflicts in the evidence, and assess the credibility of witnesses.[4]

So viewed, the evidence shows that on June 17, 2013, Burgin David Lester's home was burglarized, and 17 firearms and a special edition bottle of Jack Daniel's whiskey, among other items, were taken. On August 6, 2013, George Moore's home was burglarized, and his truck, jewelry, and seven watches were taken.

On September 17, 2013, Lisa Rogers's Toyota Tacoma was stolen from the parking lot in her apartment complex; her keys, which included one with a "Supergirl" emblem, were in the ignition. The following morning, police surveilled the area for the burglary suspects, and Detective Smith saw two male juveniles enter a wooded area near Rogers's apartment. After waiting for backup, Detective Smith

---

[3] 443 U. S. 307 (99 SCt 2781, 61 LE2d 560) (1979).

[4] (Citations and punctuation omitted.) *In the Interest of H. A.*, 311 Ga. App. 660, 661 (716 SE2d 768) (2011).

2

went into the woods along the foot path the two juveniles traversed and found multiple items that were in Rogers's truck when it was stolen, as well as a license plate from another stolen vehicle.

Later that day, a police officer spotted Rogers's stolen truck parked in a Target parking lot. Police obtained and watched the surveillance videos from Target, which depicted T. J. J. and another male exiting the truck and entering the store. The two left the store approximately ten minutes later and began walking towards the vehicle, abruptly turning and walking out of the parking lot when they saw a police car parked near the Tacoma. Detective Smith viewed a still photograph of the Target surveillance video and ascertained that it depicted the same suspects he saw enter the woods near Rogers's apartment earlier that day. Police returned to the wooded area, where they apprehended T. J. J. and the other suspect, both of whom were wearing the same clothing as they were in the surveillance video footage.

Police took T. J. J. home and, pursuant to a search warrant, searched his bedroom, where they found multiple items: keys, one of which had "Supergirl" emblazoned on it; several watches; jewelry; an iPhone; a special edition bottle of Jack Daniel's whiskey; a box of ammunition; SIM cards; and many latex gloves.

The following day, upon retrieving her truck, Rogers found a small black and brown Beretta in the center console and a pink-handled Ruger in the glove compartment, neither of which belonged to her. Police later identified the handguns as weapons stolen from Lester during the June 2013 burglary of his home.[5]

The police downloaded pictures taken from T. J. J.'s iPhone and the phone recovered from his bedroom and found many photographs, including July 26, 2013 photographs of a pink-handled revolver and a handgun; an August 7, 2013 photograph of T. J. J. wearing a gold Seiko watch; and a photograph of T. J. J. holding a bottle of Jack Daniel's whiskey. T. J. J. was arrested and taken to the police station, where he was recorded telling his co-defendant in the interrogation room that "[a]ll they got on us is the wheels."

Following a hearing,[6] the juvenile court adjudicated him delinquent based on his commission of two counts of felony theft by receiving (the guns stolen from

---

[5] Police matched the serial numbers of the guns discovered in Rogers's truck with those Lester reported stolen from his home.

[6] The Target surveillance video, video of T. J. J.'s colloquy with his co-defendant at the police station, and the photographs downloaded from T. J. J.'s phone were admitted into evidence during the hearing.

Lester's home) and two counts of misdemeanor theft by receiving (Moore's watches).[7] T. J. J. appeals, challenging the sufficiency of the evidence.

1. T. J. J. argues that the State failed to prove beyond a reasonable doubt that he knew or should have known that the watches and guns were stolen. We disagree.

Pursuant to OCGA § 16-8-7 (a), "[a] person commits the offense of theft by receiving stolen property when he receives, disposes of, or retains stolen property which he knows or should know was stolen unless the property is received, disposed of, or retained with intent to restore it to the owner. 'Receiving' means acquiring possession or control . . . of the property."

> Evidence of recent, unexplained possession of stolen goods is sufficient to support a conviction for theft by taking. However, proof of possession, alone, of recently stolen property is not sufficient to establish the essential element of the offense of theft by receiving stolen property that the possessor knew or should have known that the property was stolen. Nevertheless, knowledge sufficient to establish guilt may be inferred from possession in conjunction with other evidence of knowledge, and such guilty knowledge may be inferred from

---

[7] T. J. J. also was charged with theft by receiving Rogers's truck and Lester's bottle of whiskey, but the trial court dismissed those charges.

circumstances which would excite suspicion in the mind of an ordinary prudent man.[8]

Here, there is ample evidence to support the juvenile court's determination that T. J. J. knew or should have known that guns and watches were stolen. T. J. J. was a passenger in Rogers's stolen truck, and he fled when he observed police as he returned to the truck in the Target parking lot; the guns were in the truck at that time. Police recovered items from the truck in a wooded area near Rogers's home where T. J. J. was seen and apprehended the day after the truck was stolen. Police also found multiple stolen items in T. J. J.'s bedroom the day after the truck was stolen, including a distinctive key belonging to Rogers, multiple watches, ammunition, jewelry, and a special edition bottle of whiskey, as well as latex gloves. And police recovered from T. J. J.'s phone photographs of the guns and of T. J. J. wearing one of the watches within days after the items were stolen from Lester and Moore. Under these circumstances and given T. J. J.'s comment to his co-defendant at the police

---

[8] (Citations, punctuation, and footnotes omitted.) *Smith v. State*, 290 Ga. App. 689, 690 (659 SE2d 917) (2008).

station and his possession of the stolen property, the evidence is sufficient to support a finding of guilt.[9]

2. T. J. J. also contends that there was insufficient evidence that he exercised control over the guns stolen from Lester's home and found in Rogers's truck. Again, we disagree.

T. J. J. was filmed exiting the passenger side in Rogers's truck the day after it was stolen, and the guns were in the console and glove compartment of the truck at the time. The serial numbers of the guns found in the truck matched those provided by Lester, and police found photographs of the guns on T. J. J.'s phone, which photographs were taken the day after the guns were stolen from Lester's home. Despite the fact that the serial numbers of the guns were not visible in the photographs, given the evidence in this case, the juvenile court was authorized to conclude that T. J. J. exercised control over the guns stolen from Lester's home.[10]

---

[9] See *Green v. State*, 277 Ga. App. 867, 869 (1) (627 SE2d 914) (2006) (defendant's attempt to avoid police detection as well as flight following a crime is circumstantial evidence of guilty knowledge); *Dawson v. State*, 271 Ga. App. 217, 218-219 (1) (609 SE2d 158) (2005) (possession of stolen property, in conjunction with other evidence, may support a finding of guilty knowledge).

[10] See *Hogues v. State*, 313 Ga. App. 717, 718-719 (1) (722 SE2d 430) (2012); *In the Interest of J. D. T.*, 262 Ga. App. 860, 862-863 (1) (586 SE2d 748) (2003); *Gray v. State*, 257 Ga. App. 393, 395-396 (1) (b) (571 SE2d 435) (2002).

*Judgment affirmed. Miller and Dillard, JJ., concur.*